JOHN GRAHAM [ALBERT FRANCIS, EXECUTOR, SUBSTITUTED PLAINTIFF] *v.* HELEN I. WILKINS

BALDWIN, DALY, KING and MURPHY, Js.[1]

---

[1] By agreement of counsel the case was argued before and decided by four judges.

Argued December 5, 1957—decided January 21, 1958

*J. Warren Upson,* with whom, on the brief, was *Kenyon W. Greene,* for the appellant (defendant).

*Hugh J. McGill,* with whom, on the brief, was *Francis J. Butler,* for the appellee (plaintiff).

KING, J.   John Graham, Earl Erikson, the defendant Helen I. Wilkins, and her husband, Vincent R. Wilkins, were all employees, in different capacities, of Quaker Farms Poultry Company, hereinafter referred to as the company, a Pennsylvania corporation with its headquarters in that state. While a passenger in a truck owned by the defendant and operated by Erikson in the course of his employment, Graham sustained personal injuries in a collision, in Sheffield, Massachusetts, between the truck and a utility pole. The company had paid for having its name lettered on the truck, with the consent of the defendant, in such a manner as to indicate that the truck was owned by the company.

Graham instituted this action in his lifetime and recovered a verdict, but during the pendency of the appeal died from causes unrelated to the collision, and his executor was substituted as party plaintiff. In the interest of brevity and clarity, Graham will be referred to as the plaintiff.

The action was predicated on the liability of the defendant, as lessor of the truck to the company, un-

der our automobile rental statute. General Statutes § 2479.[2] This statute has been construed as imposing on one who rents or leases a motor vehicle to another the same liability as that of its operator, provided the vehicle, at the time in question, is being operated by one in lawful possession of it pursuant to the terms of the contract of rental. *Levy* v. *Daniels' U-Drive Auto Renting Co.*, 108 Conn. 333, 336, 143 A. 163; *Connelly* v. *Deconinck*, 113 Conn. 237, 240, 155 A. 231; *Farm Bureau Mutual Automobile Ins. Co.* v. *Kohn Bros. Tobacco Co.*, 141 Conn. 539, 542, 107 A.2d 406. As pointed out in the cases cited, the statutory liability is imposed, ex contractu, by making it a necessary term of every contract for the rental of a motor vehicle. "The statute gives, in terms, the injured person a right of action against the defendant which rented the automobile . . . . It was a right which the statute gave directly, not derivatively, to the injured person as a consequence of the contract of hiring." *Levy* v. *Daniels' U-Drive Auto Renting Co.*, supra.

The defendant claimed that there was no contract of rental between her and the company, and that even if there was one it was made in Pennsylvania, at the headquarters of the company, and so would be unaffected by our statute, the applicability of which she claims is confined to contracts of rental entered into in Connecticut.

The court charged, in effect, that there would be no liability on the part of the defendant unless there was a contract of rental or leasing between herself

[2] "Sec. 2479. LIABILITY OF OWNER FOR DAMAGE CAUSED BY LEASED CAR. Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner."

as owner and the company as lessee. It then proceeded to define rental or lease and made it clear to the jury that personal property such as a motor vehicle could be the subject of a rental agreement; that to rent or lease was "to grant the possession and enjoyment of a thing for rent," "to let or to hire out"; that such a renting must be "for a specified rent or compensation"; and that if such an agreement was made it would be valid even though it was oral. Under the facts of this particular case, the charge was an adequate explanation of a rental or lease within the terms of the statute.

The defendant's claims of proof were that she had orally arranged with the company to allow it the use of her truck whenever it was necessary for the business of the company, that in consideration she was to be reimbursed for expenses for gasoline, oil, tires and repairs incurred in such use and that in fact she was so reimbursed from time to time after sending to the company, in Pennsylvania, itemized bills for the expenses. Furthermore, a portion of the finding not subject to correction discloses that the plaintiff offered evidence that the defendant was reimbursed for the use of the truck on a mileage basis, an arrangement which could not have amounted to an exact reimbursement of out-of-pocket expenses. The evidence was thus sufficient to warrant a finding by the jury that there was a rental of the truck within the meaning of the statute. The principal contention of the defendant on this issue is that the compensation for the use of the truck had to exceed reimbursement of out-of-pocket expenses in order for there to be a rental. There is no merit in this claim. Whether the rental, as an isolated transaction, was profitable or unprofitable to the defendant would not be conclusive of its character. Furthermore, it was undis-

puted that the defendant and her husband were employees of the company, and whether the defendant felt that it was good business for her to rent the truck to the company for the out-of-pocket operating cost, or even for a lesser amount, was a matter for her to determine. She could not nullify what would otherwise be a rental agreement merely by making the rental low. There is nothing in *Spector Motor Service, Inc.* v. *Walsh*, 135 Conn. 37, 69, 61 A.2d 89, greatly stressed by the defendant, which gives any support to her claim. That case involved the construction of a taxing statute in which out-of-pocket operating expenses of trucks rented from another corporation were quite properly added to the charges for rental in determining the total cost of operating the trucks.

The court charged that it made no difference whether the actual contract of leasing, if there was one, came into existence in Pennsylvania or in Connecticut, since on the defendant's own claims of proof the contract of rental, if the jury found there was one, was to have its beneficial operation and effect in Connecticut. The defendant in effect conceded in her brief that the truck, although registered in Rhode Island, was garaged in Waterbury, Connecticut, where the defendant and her husband resided. Her claims of proof were that she still was domiciled in Rhode Island, where she and her husband had resided prior to coming to Waterbury, and that the truck was used not only in Connecticut but also in Massachusetts and New York, as the business needs of the company dictated. The truck could not be operated in either Massachusetts or New York until it had covered, in Connecticut, the distance from the place where it was kept to the state line. In this situation the court acted commendably in simplifying the charge to the jury by itself applying the rule

that a liability arising out of a contract depends upon the law of the place of contract unless the contract is to be performed or to have its beneficial operation and effect elsewhere. *Levy* v. *Daniels' U-Drive Auto Renting Co.*, 108 Conn. 333, 338, 143 A. 163. Here, on the defendant's own claims, the beneficial operation and effect of the contract was not in Pennsylvania but in Connecticut, where the car was kept and to a considerable extent, at least, operated. This fact makes unnecessary any discussion of the claims of the defendant as to the law determining whether the contract was made in Pennsylvania or in Connecticut. Nor is there any merit, under the foregoing facts, in the defendant's claim that the beneficial operation and effect of the contract could not be said to be in Connecticut in the absence of proof that under the rental contract the truck was operated in Connecticut for a greater distance than in any other one state. The keeping of the truck in Connecticut where it was available for use as the company's needs required was a beneficial operation and effect of the rental contract, as was also the actual mileage run by the truck in the company's business.

A further claim of error involved a ruling on evidence in which testimony was admitted that Erikson pleaded guilty in Massachusetts to a charge of speeding. The defendant's sole ground of objection was that Erikson had no authority to make admissions binding upon her, even though there was a rental of the truck. The defendant quite properly makes no claim that the plea of guilty would not have been admissible against Erikson himself, had he been a party defendant, within the limitations of our rule as set forth in cases such as *Zenuk* v. *Johnson*, 114 Conn. 383, 388, 158 A. 910, and *Fitzhugh* v. *Bushnell*, 118 Conn. 677, 680, 174 A. 80. Ordinarily, where one

person is operating the motor vehicle of another, even though in the course and scope of an authority so to do, he has no authority to make admissions of liability which can be binding on the owner. *Morse* v. *Consolidated Ry. Co.,* 81 Conn. 395, 399, 71 A. 553; *Wade* v. *Yale University,* 129 Conn. 615, 618, 30 A.2d 545; *Fairbanks* v. *State,* 143 Conn. 653, 658, 124 A.2d 893. A fortiori, this is true here, since of course the rental contract created no agency relationship.

The verdict of the jury, as well as their answer to an interrogatory, establishes that they found that the defendant had rented the truck to the company. Since a corporation can act only through the instrumentality of human beings, the defendant, in renting to the company, necessarily authorized the company to engage some person to operate the truck. A special defense that the plaintiff was the person so engaged and had without authority permitted Erikson to operate the truck was abandoned, and the defendant took no exception to the court's assumption in its charge that Erikson, and not the plaintiff, was the agent of the company in the operation of the truck. Therefore the operation of the truck by Erikson was in law the operation of the truck by the company as the corporate lessee. As already pointed out, the basic objective of the automobile rental statute is to make the owner as liable as the operator for damages caused by the operation of a car by one in lawful possession of it pursuant to the terms of a rental contract. The statute must be construed in harmony with this basic objective. This requires that the admissions of the operator of the car be regarded as the admissions of the owner-lessor, not on any theory of agency, since of course there is no agency relationship between them, but because by virtue of the express terms of the statute

the owner-lessor is made the alter ego of the operator so that the latter's acts with respect to the operation of the car, including any admissions concerning that operation, are in law the acts of the owner-lessor. Any other construction of the statute would defeat its basic purpose. Thus, for all that appears, the verdict of the jury in this very case might have been in favor of the defendant but for the plea of guilty of the operator, Erikson. Had he been joined as a party defendant and the plea of guilty been admitted against him only, the jury's verdict might have been against him and in favor of the defendant owner-lessor. This would be a result directly contrary to, and destructive of, the basic objective of the statute. This objective can be attained only by holding that in the case of the operation of a motor vehicle by one in lawful possession of it pursuant to the terms of a rental contract any statements of the operator, including a plea of guilty, which would as to him constitute admissions—at least in the absence of fraud or collusion, of which there is no claim here—must be held admissible against the owner-lessor. There was no error in the ruling complained of.

Another basic assignment of error was predicated on the court's exclusion of questions which were asked of the plaintiff, called by the defendant as her witness, and were calculated to elicit the fact that the plaintiff had received workmen's compensation payments from the company on account of the injuries sustained by him in the collision and that he had thereby made an election of remedies and forfeited any right of recovery against the defendant, who claimed to be a fellow servant. The defendant filed an answer alleging several special defenses. Nowhere in the answer is there any hint of any such

claim as this. It is too clear for argument that the attempt to utilize this defense without any pleading remotely suggesting it was entirely contrary to Practice Book § 102, which provides that "[n]o facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that he has no cause of action, must be specially alleged." The court quite properly excluded the evidence offered.

The final claim of the defendant, that the verdict of $45,000 recovered by the plaintiff was excessive, we do not feel merits analytical discussion. The court, in a carefully considered memorandum of decision, analyzed the evidence on this point and ordered a remittitur of $12,000. This the plaintiff duly filed. It was all to which the defendant was entitled.

There is no error.

In this opinion the other judges concurred.