## KENNETH T. COOK *v.* COLLINS CHEVROLET, INC., ET AL.
### (12641)
### (12642)

PETERS, C. J., SHEA, SANTANIELLO, CALLAHAN and MORAGHAN, Js.

Argued February 11—decision released March 25, 1986

*Michael C. Jainchill,* with whom was *Kathryn Calibey,* for the appellant (plaintiff).

*James Sicilian,* with whom, on the brief, was *Scott P. Moser,* for the appellee (defendant American Universal Insurance Company).

*Jon S. Berk,* with whom, on the brief, was *Thomas P. Barrett,* for the appellee (named defendant).

PETERS, C. J. This appeal principally concerns the extent of the statutory liability of an automobile dealer and its insurer when a motor vehicle bearing a loaned dealer's license plate becomes involved in an accident. The plaintiff, Kenneth T. Cook, brought an action in negligence against the defendants George E. Milette (hereinafter Milette) and Collins Chevrolet, Inc. (hereinafter Collins), for personal injuries sustained in a collision between the plaintiff's motorcycle and a pick-up truck owned and operated by Milette, but bearing a dealer license plate belonging to Collins. Collins' motion for summary judgment was granted by the trial court, *Tamborra, J.* Thereafter, Milette was granted permission to implead the American Universal Insurance Company (hereinafter American Universal) as a third party defendant to answer to a third party complaint for indemnification and damages. The action between the plaintiff and Milette resulted in a jury verdict in the plaintiff's favor in the amount of $200,046. The plaintiff then sought a recovery as subrogee from

American Universal, the third party defendant. In that action, the trial court, *Loiselle, J.*, state trial referee, exercising the powers of the Superior Court, rendered judgment in favor of American Universal. The plaintiff has appealed from the judgments rendered in favor of Collins and American Universal. We find no error.

The memoranda of decision disclose the following undisputed facts. The defendant Collins sold a pick-up truck for cash to Milette on March 19, 1981. After ascertaining that Milette had liability insurance covering personal injury and property damage, Collins lent Milette a dealer plate for the truck while Milette's registration of the truck was pending. Less than fifteen days after the sale, on March 31, 1981, while driving the truck with the Collins license plate, Milette was involved in an accident with the plaintiff's motorcycle that resulted in personal injury to the plaintiff. Milette subsequently registered the truck in his own name on April 2, 1981.

When Milette purchased the truck, and on the day of the accident, Milette was insured by Nationwide Insurance Company under an automobile liability policy providing bodily liability coverage of $25,000 per person and $50,000 per accident. Collins was then insured under a $500,000 garage policy issued by American Universal. The plaintiff, his judgment against Milette having remained largely unsatisfied, made a timely demand for payment upon American Universal, which American Universal refused.

In the plaintiff's combined appeals from the judgments rendered in favor of the defendants Collins and American Universal, the plaintiff has raised three claims of error. Two of these claims of error involve alleged misconstruction of General Statutes § 14-60[1]

---

[1] General Statutes (Rev. to 1981) § 14-60 provides: "Sec. 14-60. USE OF DEALERS' AND REPAIRERS' PLATES. No dealer or repairer shall rent or allow

which, according to the plaintiff, imposes statutory liability upon a dealer and its insurer whenever a car bearing a license plate owned by the dealer causes injury that exceeds the automobile owner's insurance coverage. The third claim alleges misconstruction by the trial court of the terms of the American Universal insurance policy. We find no error.

## I

The plaintiff's basic statutory claim of error is that the trial court, in granting the defendant Collins'

or cause to be rented, or operate or allow or cause to be operated for hire, or use or allow or cause to be used for the purpose of conveying passengers or merchandise or freight for hire, any motor vehicle registered under a general distinguishing number and mark. No dealer or repairer shall loan a motor vehicle or number plate or both to any person except for the purpose of demonstration of a motor vehicle, or when a motor vehicle owned by or lawfully in the custody of such person is undergoing repairs, or when such person has purchased a motor vehicle, the registration of which by him is pending, and in any case for not more than fifteen days in any year, provided such person shall furnish proof to such dealer or repairer that he has liability and property damage insurance which will cover any damage to any person or property caused by the operation of such loaned motor vehicle, motor vehicle on which such loaned number plate is displayed or both. Such person's insurance shall be the prime coverage. If the person to whom such dealer or repairer loaned the motor vehicle or the number plate did not, at the time of such loan, have in force any such liability and property damage insurance, such person and such dealer or repairer shall be jointly liable for any damage to any person or property caused by the operation of such loaned motor vehicle or a motor vehicle on which such loaned number plate is displayed. Every dealer and repairer shall keep a record of each loaned number plate showing the date loaned, date returned and the name and operator's license number of the person operating any vehicle with such loaned number plate. Such record shall be retained by the dealer or repairer for a period of six months from the date on which such number plate or motor vehicle or both were loaned and such record shall be available during business hours for examination by any police officer or inspector designated by the commissioner of motor vehicles. Any licensed dealer or repairer may operate or cause to be operated by a bona fide full-time employee such motor vehicle for use in connection with his business and for his personal use, or by a part-time employee for use only in connection with the business of such dealer or repairer."

motion for summary judgment, misconstrued the operative terms of § 14-60. Although the plaintiff concedes that his claim against Collins is entirely statutory,[2] and that Collins has fully complied with the requirements of § 14-60, the plaintiff nonetheless argues that the trial court erred in its judgment in favor of Collins.

This claim requires an examination of the language, history, and applicability of § 14-60. The statute, in its present form, permits an automobile dealer to lend a dealer license plate to a purchaser of a motor vehicle, for a period not to exceed fifteen days, while the purchaser's registration is pending "provided such person shall furnish proof to the dealer . . . that he has liability and property damage insurance which will cover any damage to any person or property caused by the operation of the . . . motor vehicle on which the loaned number plate is displayed . . . . Such person's insurance shall be the prime coverage. If the person to whom the dealer . . . loaned . . . the number plate did *not,* at the time of such loan, have in force any such liability and property damage insurance, such person and such dealer . . . shall be jointly liable for any damage to any person or property caused by the operation of . . . a motor vehicle on which the loaned number plate is displayed." (Emphasis added.) The provision for joint liability was added to the statute in 1973. Prompted by *DeRubbo* v. *Aetna Ins. Co.,* 161 Conn. 388, 394, 288 A.2d 430 (1971), to clarify the consequences of a dealer's violation of the statute, the legislature determined that a dealer's loan of a dealer plate to an

---

[2] In the trial court, the plaintiff alleged that Collins might be liable to him because Milette was Collins's agent, servant or employee, or because Collins had continued to own the pick-up truck that Milette was operating. The trial court, relying on uncontroverted affidavits by Collins, determined that there was no merit to these allegations. The plaintiff's brief in this appeal expressly abandons any argument of an agency relationship between Milette and Collins. In oral argument before this court, the plaintiff acknowledged that his only continuing claim against Collins was based upon § 14-60.

uninsured purchaser of a motor vehicle would make the dealer jointly liable with the purchaser.[3] Because Milette was not uninsured, and because Collins did not violate § 14-60 in any other way, the statute on its face affords the plaintiff no remedy in this case.

To avoid this logic, which the trial court understandably found compelling, the plaintiff offers an argument of statutory construction that asks us to ascribe independent meaning, for liability purposes, to that part of § 14-60 which provides, without limitation, that the purchaser's insurance "shall be the prime coverage." This statutory language, which antedated the provision for joint liability, must mean, according to the plaintiff, that the dealer always has an unqualified obligation to provide secondary insurance for the benefit of injured claimants. A dealer who complies with the statute, although not primarily and jointly liable with the uninsured purchaser, on this reasoning is still secondarily liable to the extent of his insurance coverage. The statute should be construed to impose such secondary liability, the plaintiff argues, for three overlapping reasons of policy: to implement the statute's remedial purpose of protecting those injured in motor vehicle accidents involving dealer-loaned license plates; to avoid the anomaly of providing greater public protection when the statute is violated than when it is

---

[3] The legislative debate accompanying the enactment of Public Acts 1973, No. 73-233, which amended § 14-60 to impose joint liability on a dealer who lends a dealer plate to an uninsured purchaser, reflects a legislative intent to impose liability on a dealer *only* when he violates the mandate of § 14-60 and lends dealer plates to a purchaser who is not insured. "[T]he obvious intent of this statute is to protect the public by preventing the loaning of either plates or motor vehicles *when the vehicle to be operated is not insured.* . . . [T]he intent is so obvious to protect the public . . . and require that *in any situation where the individual who loans the plates or loans the automobile violates the law,* he too shall be liable." (Emphasis added.) 16 H. R. Proc., Pt. 8, 1973 Sess., p. 3654 (remarks of Representative Samuel S. Freedman); see also 16 S. Proc., Pt. 5, 1973 Sess., pp. 2259–60 (remarks of Senator George C. Guidera).

obeyed; and to preserve the symmetry of liability for dealers who lend motor vehicles and dealers who lend dealer license plates. We are unpersuaded.

The plaintiff's argument assumes that the legislative reference to "prime coverage" in § 14-60 is addressed to the question of liability. As *Whitfield* v. *Empire Mutual Ins. Co.*, 167 Conn. 499, 356 A.2d 139 (1975), illustrates, that assumption is at best debatable. In *Whitfield*, the question was the priority of coverage under two insurance policies covering the same accident, one a policy insuring the operator of the motor vehicle, and the other insuring the dealer who had temporarily loaned the car to the operator. Despite contrary language in the policies, this court held, pp. 505–508, that the language of § 14-60 was clear and that its mandate was binding. Finding a constitutional public purpose in the legislature's desire to eliminate confusion or uncertainty about overlapping insurance coverages, we determined that "such clarification is 'in the interest of public convenience' by serving to avoid the delay and expense to policyholders and, indeed, to innocent third parties and the general public, from extended litigation between insurance carriers with conflicting policy provisions." Id., 508.

In light of the total absence of any indication that the "prime coverage" language in § 14-60 was intended to serve any purpose other than that identified in *Whitfield*, we decline to broaden the scope of the statutory liability it expressly imposes upon a dealer temporarily lending a dealer license plate to a purchaser of a motor vehicle.[4] A cause of action that is solely

---

[4] The legislature could, of course, have chosen to impose liability on a dealer to the extent of the *deficiency* in the effective insurance coverage of the purchaser. See General Statutes § 42a-2-510 (2) and (3). The language of § 14-60, however, in contrast to the explicit language of § 42a-2-510 (2) and (3), does not support a conclusion that such was the legislative intent. The mere reference to priority of insurance coverage contained in § 14-60

statutory in its derivation cannot be judicially expanded to encompass grievances for which the legislature has not seen fit to provide a remedy. Under other circumstances, as for example in rentals of motor vehicles governed by General Statutes § 14-154a, the legislature has indeed imposed a heavy burden of joint liability on dealer-lessors. See *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 284–90, 472 A.2d 306 (1984). Comparison of the language of § 14-60 with that of § 14-154a makes it clear that the former imposes only limited liability. The trial court therefore correctly decided that, in the suit between the plaintiff and Collins, Collins was entitled to summary judgment because of its full compliance with the conditions of § 14-60.

## II

The plaintiff's cause of action against the defendant American Universal is based on an alleged right of subrogation, under General Statutes § 38-175, to whatever claim the purchaser, Milette, may have had against American Universal. The plaintiff's procedural compliance with the subrogation statute is conceded. What is instead at issue is whether either the provisions of § 14-60 or the terms of the insurance policy issued by American Universal to the dealer, Collins, afford to Milette a claim to which the plaintiff can be subrogated. The trial court concluded that no such claim existed. We agree.

The plaintiff's statutory claim has largely been answered by our discussion, in part I, of the absence of statutory liability for a dealer complying with the terms of § 14-60. As this court held in *DeRubbo* v. *Aetna Ins. Co.*, supra, 394, § 14-60 imposes no direct liability

---

does not, as the plaintiff argues, compel such an interpretation in the face of the statute's unambiguous imposition of joint liability on a dealer *only* when the purchaser is uninsured.

upon an insurance carrier. Although the legislature subsequently amended § 14-60 to make a *dealer* expressly liable for noncompliance with the statute's insurance provision, nothing in that amendment purported to give an injured party a direct cause of action against an *insurer*. The statutory reference to "prime coverage" does not require an insurer to provide secondary coverage that the statute does not otherwise mandate. See part I, supra. The statute addresses the liability of a dealer; when, as in this case, the dealer bears no responsibility for damages, the dealer's insurer cannot be held liable under the statute.

The plaintiff's contractual claim under the terms of the American Universal insurance policy is, of course, independent of his statutory claim. In his pursuit of that claim, the plaintiff urges us to find, contrary to the holding of the trial court, that the policy is ambiguous and self-contradictory in the definition of its coverage. In describing who is an insured, the policy provides coverage for a customer of the insured dealer under certain circumstances, when (1) such a customer is using a covered auto with the dealer's permission and (2) the customer does not himself have insurance that meets local minimum mandatory requirements.[5] On its face,

---

[5] Relevant portions of the policy issued by American Universal to Collins provide:

"PART IV—LIABILITY INSURANCE

"D. WHO IS AN INSURED.

"1. For Covered Autos.

"a. You are an insured for any covered auto.

"b. Anyone else is an insured while using with your permission a covered auto except:

"(1) The owner of a covered auto you hire or borrow from one of your employees or a member of his or her household.

"(2) Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking or storing autos unless the business is your garage operations.

"(3) Your customers, if your business is shown in ITEM ONE of the declarations as an auto dealership. However, if a customer of yours:

this second proviso excludes Milette, whose insurance concededly met this state's statutory minimum requirements.

The plaintiff argues, however, that the policy's limited coverage for customers applies only to the loan of a dealer's vehicle and not to the loan of a dealer's license plate. The plaintiff maintains that a dealer can neither give nor withhold "permission" to use a vehicle that the dealer no longer owns. For this reason, a customer who uses a vehicle with a dealer plate does not unambiguously come within the category of "covered auto" but falls instead into the residual category of "any auto," for which insurance coverage is allegedly provided without regard to the adequacy of the customer's own insurance. Such a reading of the policy is supported, according to the plaintiff, by the manner in which the insurance premium is calculated, because the premium includes a separate line item for uninsured motorist insurance for twenty-seven license plates.

The plaintiff's proffered reconstruction of the American Universal policy is impossible to reconcile with the policy's clear expression of an intent to cover customers

---

"(a) Has no other available insurance (whether primary, excess or contingent), he or she is an insured but only up to the compulsory or financial responsibility law limits where the covered auto is principally garaged.

"(b) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered auto is principally garaged, he or she is an insured only for the amount by which the cumpulsory or financial responsibility law limits exceed the limits of his or her other insurance.

"c. Anyone liable for the conduct of an insured described above is an insured but only to the extent of that liability. However, the owner or anyone else from whom you hire or borrow a covered auto is an insured only if that auto is a trailer connected to a covered auto you own.

"2. For Garage Operations Other Than Covered Autos.

"a. You are an insured.

"b. Your employees, directors or shareholders are insureds but only while acting within the scope of their duties."

of the insured dealer only when those customers are uninsured or have failed to carry the statutory minimum coverage. American Universal chose to define "covered autos" operationally, in conjunction with its definition of "insured." Operationally, under Part D. 1 of the policy, that term includes not only loaned vehicles but also vehicles that, with the dealer's permission, use a dealer's license plate. The calculation of the insurance premium is entirely consistent with such an operational understanding of "covered autos." Even if that operational understanding were not entirely clear, however, the policy unmistakably provides no coverage of any kind for adequately insured customers of its dealer. On that bedrock, the plaintiff's argument of ambiguity founders.

We therefore agree with the trial court that the plaintiff has failed to establish his cause of action against the defendant American Universal. The claim to which the plaintiff was subrogated was that of Milette, and Milette had neither a statutory nor a contractual claim against this defendant.

There is no error.

In this opinion the other judges concurred.