[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#120)
This memorandum of decision addresses the motion for summary judgment submitted by the defendant, Brothers' Toyota, Inc. (Brothers'), under date of May 7, 1998 (#120). Therein, Brothers' claims that the plaintiff's action is barred by the application of General Statutes §14-60, and that there is no genuine issue of material fact concerning this issue, so that summary judgment should be entered on its behalf. The plaintiff objects to the motion, arguing that § 14-60 provides no immunity for Brothers' under the circumstances of this case. Memorandum of Law Supporting Plaintiff's Objection to Defendant's Motion for Summary Judgment, dated June 26, 1998 (#115). The plaintiff further submits that Brothers' is subject to vicarious liability, pursuant to the allegations pending in the complaint, through the effect of General Statutes §14-154a and § 52-183. Id. The co-defendant, Darshan Kohli, also opposes the motion for summary judgment, asserting that Brothers' has failed to eliminate material issues of fact regarding its compliance with the provisions of § 14-60, thereby rendering the statute unavailing at this stage of the proceedings. Defendant Kohli's Memorandum in Opposition to Motion for Summary Judgment, dated May 12, 2000 (filed May CT Page 11063 15, 2000). The court finds these issues in favor of the plaintiff and the co-defendant, Kohli.
The plaintiff brought this action to recover damages for personal injuries and losses resulting from an incident that occurred on April 27, 1997. In his single count complaint dated July 11, 1997, the plaintiff alleges that at the time of this incident, while he operated a motorcycle on a public highway, the defendant Kohli negligently operated a motor vehicle owned by Brothers', and that this negligent operation caused the collision and the resulting damages. In addition to his claim for direct liability against Kohli, the plaintiff seeks to impose vicarious liability upon the defendant-owner Brothers' through the imposition of two legal theories. In the fourth paragraph, the plaintiff alleges that at the time in question, Kohli was operating the Brothers' vehicle "as a leased or rented motor vehicle and said Brothers' Toyota, Inc. is legally liable pursuant to Connecticut General Statutes Section14-154a, as amended." In the sixth paragraph, the plaintiff further alleges that at the time of this incident, Kohli was operating Brothers' vehicle "as an employee, agent and/or servant of said Brother' Toyota, Inc. within the scope of his employment and with his permission and consent. Said Brothers' Toyota, Inc. is legally liable pursuant to Connecticut General Statutes Section 52-183, as amended." The court will focus upon these allegations in evaluating the pending motion for summary judgment.
The parties have submitted numerous exhibits for the court's review and consideration in this matter. See Practice Book Sec. 17-45.[1] The exhibits provided by Brothers' include: a copy of the complaint filed in this action; a blank form entitled Agreement: Temporary Loan of Motor Vehicle, printed on both sides; a photocopy of a portion of the Agreement: Temporary Loan of Motor Vehicle form dated April 24, 1997, bearing some handwritten entries, some stricken portions, and some blocked-out areas;[2] a photocopy of a driver's license ostensibly bearing the name of the defendant Kohli; a photocopy of an insurance identification card apparently issued by Allstate Indemnity Company, with effective dates of January 18, 1996 to July 18, 1996; a photocopy of a Retail Order for a Motor Vehicle, dated April 23, 1997, representing Brothers' agreement to order a new 1997 Toyota Camry for Kohli, bearing the handwritten entry "loaner car until delivery approx 14 days"; a photocopy of the defendant Kohli's responses to plaintiff's Interrogatories and Production requests, dated January 21, 1998; a photocopy of a computer print out apparently referencing insurance coverage effective on April 27, 1997 and losses claimed against that coverage; and the sworn affidavit of Thomas Gallant, who represents himself as being "familiar with the facts and circumstances surrounding Darshan Kohli's purchase of a 1997 Toyota Camry LE at Brothers' Toyota."[3]
CT Page 11064 In opposition to the summary judgment motion, the plaintiff has also submitted a number of exhibits, some of which duplicate those which were previously tendered by Brothers': the Retail Order for a New Vehicle form; the photocopy of the Agreement form; and the driver's license and insurance card referred to above.[4] Also in opposition to the pending motion for summary judgment, the co-defendant, Kohli, has submitted documents purporting to be excerpts from his deposition, which had been taken on March 2, 2000.[5] Other than the discovery responses and Gallant's affidavit, none of the exhibits purports to be a sworn or certified document.
In deciding whether to grant summary judgment in this matter, the court has observed the applicable rules of law. Practice Book Sec. 17-49 provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[T]he genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." (Internal quotation marks omitted.) United Oil Co. v. UrbanDevelopment Commission, 158 Conn. 364, 378-79, 260 A.2d 596 (1969). It is axiomatic and fundamental that "the party seeking summary judgment has the burden of showing the non-existence of any material fact. . . ." HomeIns. Co. v. Aetna Life Casualty, 235 Conn. 185, 202, 663 A.2d 1001
(1995). "[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." (Internal quotation marks omitted.) Millerv. United Technologies Corp., 233 Conn. 732, 752, 660 A.2d 810 (1995). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Internal quotation marks omitted.) Hertz Corp. v. Federal Ins. Co.,245 Conn. 374, 381, 713 A.2d 820 (1998); see also Serrano v. Burns,248 Conn. 419, 424, 727 A.2d 1276 (1999). Summary judgment thus "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp., supra, 233 Conn. 752.
The court has utilized the foregoing standards when reviewing the pleadings and affidavits submitted in this matter. The court will first address Brothers's initial argument concerning the application of §14-60 to the facts of this case. Next, the court will examine the effects of § 14-154a and § 52-183, issues raised by the plaintiff. Kohli and by Brothers' in its Reply Brief to Plaintiff's Opposition to Motion for Summary Judgment, dated December 28, 1999 (#117). Viewing the evidence in the light most favorable to the plaintiff and the defendant Kohli, as nonmoving parties, a close examination of the evidentiary CT Page 11065 documents submitted, including Gallant's affidavit, reveals that despite Brothers' claims, a number of genuine issues of material fact persist concerning the relationship between that defendant, Kohli, and the vehicle Kohli was driving at the time the plaintiff sustained his injuries. See Home Ins. Co. v. Aetna Life Casualty, supra,235 Conn., 202; United Oil Co. v. Urban Development Commission, supra, 158 Conn., 378-79. Under these circumstances, the motion for summary judgment must be denied.
 I APPLICATION OF § 14-60 TO BROTHERS' TOYOTA, INC.
The defendant urges the court to preclude the plaintiff from proceeding in this case by applying the principles established in Cook v. Collins,199 Conn. 245, 506 A.2d 1035 (1986). The plaintiff, joined by the co-defendant, counters that Cook v. Collins is limited by the facts of that case and that under the circumstances presented here, § 14-60
does not bar him from proceeding in court. The court finds that the facts of Cook v. Collins are so distinct from those presented here, that neither the statute nor its interpretation in that case proscribe the plaintiffs cause of action.
In Cook v. Collins, supra, the Supreme Court was called upon to determine whether the application of § 14-60[6] would entitle the defendant dealer, Collins, to summary judgment where he had loaned a license plate to an individual who had purchased a vehicle from him, and who was driving that purchased vehicle while awaiting registration when the accident in question occurred.[7] The case clearly stands for the proposition that when a motor vehicle dealer has sold a vehicle to a party, and that vehicle bears the dealer's license plate while the purchaser is operating his new vehicle, awaiting completion of an initiated motor vehicle registration process, § 14-60 will protect the dealer from liability for injuries caused by the vehicle's negligent operation by the purchaser, so long as the purchaser carries appropriate insurance coverage. Id., 250. However, the defendant Brothers' has not provided any basis for concluding that the Cook v. Collins analysis is intended to cover circumstances such as those presented in the pending matter, where issues of pending motor vehicle registration have not been implicated, where there is no clear evidence that Brothers' had ascertained that Kohli carried effective liability insurance, and where it is not alleged that Kohli was driving a vehicle he had actually purchased and which had come into his possession through that purchase, but rather was operating a loaner vehicle belonging to the dealer itself
Section 14-60 (a) establishes a two-pronged analysis to be used in CT Page 11066 determining whether Brothers', as a dealer defendant, is protected by the immunity offered by this statute. First, the court must ascertain whether Kohli was operating the vehicle owned by Brothers' as a part of a demonstration or "test drive"; whether he was operating that motor vehicle because his own car was undergoing repairs to be performed by Brothers'; or whether he was awaiting the registration of a vehicle he had already purchased from Brothers'. If any one of these first three criteria has been satisfied, the protections of § 14-60 might apply to the dealer, if at the time the Kohli received the loaner vehicle, Brothers' also had obtained proof that this patron had "liability and property damage insurance which will cover any damage to any person or property caused by the operation of the loaned motor vehicle," satisfying the second prong of Section 14-60 (a). If Kohli, "the person to whom the dealer or repairer loaned the motor vehicle or the number plate did not, at the time of such loan, have in force any such liability and property damage insurance, such person and such dealer or repairer shall be jointly liable for any damage to any person or property caused by the operation of the loaned motor vehicle. . . ." Section 14-60 (a). The text of § 14-60 (a) thus authorizes a dealer to loan a motor vehicle only under limited circumstances, and assumes that such loan will be provided only when the dealer has acknowledged proof of the requisite primary liability coverage maintained by the person to whom the loaner vehicle is delivered.
Despite Brothers' protestations to the contrary, the exhibits now before the court, fairly and objectively reviewed, raise significant questions concerning the applicability of the first prong of § 14-60
to Brothers' under the circumstances of this case. Specifically, the proffered exhibits present material issues concerning the relation between Brothers', Kohli, and the Brothers' vehicle operated by Kohli at the time of this incident, and do not resolve the issues surrounding Kohli's permissive use of the vehicle owned by Brothers'. For instance, each copy of the Retail Order for a Motor Vehicle provided by the parties provides strong basis for the inference that Brothers' did not provide Kohli with the use of its "loaner car" for purposes of awaiting a "pending" registration, within the meaning of § 14-60 (a). The Retail Order form contains a obvious box which could have been checked off it this was the case, yet the box labeled "New Registration" remains empty on the forms submitted. However, adjacent to the "new Registration" box, the order also contains a box labeled "Transfer": this box is checked off, yielding the reasonable inference that it was intended that Kohli transfer his prior registration to the new Toyota Camry when it was delivered to him, and not that he awaited a "pending" registration.
The Agreement form, submitted by both the plaintiff and Brothers', raises a further question as to whether § 14-60 definitively applies CT Page 11067 to the facts of this case. Each copy of this document presents three classifications of users for the loaner vehicles provided by Brothers': Service Customer, Prospective Buyer, or Registration Pending. Each type of use is accompanied by a box which could be checked off to indicate the classification of the user for the loaned vehicle. In Kohli's case, the box for "Registration Pending" remains unmarked, while the box labeled "Prospective Buyer" is checked off, notwithstanding the fact that he had already selected and ordered his Camry. This potential evidence must be viewed in the additional context provided by the exhibit entitled Retail Order for a Motor Vehicle, also submitted by both the plaintiff and Brothers'. A fair and objective evaluation of this document further indicates that at the time of this incident, Kohli was not operating the loaner car "for the purpose of demonstration of a motor vehicle," within the application of § 14-60 (a). Although Kohli had entered a contract for purchase of a 1997 Camry LE, and although he had paid a total of $10,000 in deposit funds toward that purchase, plus the provision of his trade-in vehicle worth $1,759, he would have to pay Brothers' the additional sum of $10,078.28 before Brothers' would allow him to take possession of the Camry or, in other words, to complete the purchase. Notwithstanding the existence of the sales order form, no completed bill of sale was presented, yielding the reasonable inference that Brothers' and Kohli were participants in a merely inchoate, albeit desired, purchase transaction involving a Camry, not the vehicle Kohli was operating at the time of this incident in question.
Similarly, there is no evidence from which the court could reasonably conclude that Kohli had ceded his old car to Brothers' for because this vehicle was "undergoing repairs," within the meaning of § 14-60 (a). Neither pleadings to this effect, work orders nor estimates have been presented with the exhibits in support of or in opposition to the pending motion for summary judgment.[8] The factual circumstances of this case, thus, differ markedly from those presented in Cook v. Collins,
supra, where the purchase of a motor vehicle from the defendant-dealer had not only been completed at the time the accident occurred, but the purchased vehicle it self was alleged to have been involved in the collision that caused the plaintiff's injuries. Cook v. Collins, supra,199 Conn. 247.
The application of § 14-60 (a) is placed further in question by the second prong of the statutory requirements, including the terms under which Kohli was allowed to use the loaner vehicle. The court has received no absolute evidence that Kohli "furnished proof" of liability insurance before receiving the loaner vehicle from Brothers': the furnishing of such proof is a predicate to the protections of § 14-60 (a). Brothers's exhibits include an insurance identification card which shows Kohli's coverage as being effective only through July 18, 1996, months CT Page 11068 prior to the transactions at issue. Although Kohli likely had effective liability coverage was likely in effect at the time Brothers' provided the loaner car, as demonstrated through the exhibit showing losses covered in April of 1997, even the affidavit of Thomas Gallant fails to contain a specific statement that the dealer had been furnished proof of effective coverage at the time Kohli received the loaner vehicle.
Other aspects of § 14-60 (a)'s second prong render the facts of this case inappropriate for the statute's protections. Section 14-60 (a) prescribes a limited period for the use of a loaner vehicle: the dealer may make such a vehicle available to a member of the three classifications of users "for not more than thirty days in any year." Id. The term of Kohli's use was not circumscribed in any way relevant to the pending case. As previously noted, the Retail Order for a Motor Vehicle form indicates: "Loaner Car until Delivery Approx 14 Days". However, the form fails to establish a specific date on which ordered Camry will be delivered: the form indicates only a blank space, without entry.[9] This form must be read, of course, in concert with the Agreement form, which was dated April 24, 1997, and indicates May 9, 1997 as the date on which Kohli was expected to return the loaner vehicle. Determination of Kohli's status as a user of the loaner vehicle, for whom § 14-60 provides protection to Brother, thus requires an assessment of what was intended by the parties to the Agreement and Retail Order forms. Such intention cannot be determined as a matter of law, especially in the face of the conflict presented by the various documents here referenced. "Summary judgment is inappropriate where the inferences that the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions. Nolan v. Borkowski, 206 Conn. 495,505, 538 A.2d 1031 (1988)." Tryon v. North Branford, 58 Conn. App. 702,707, ___ A.2d ___ (2000).)
Brothers' has tendered the affidavit of Thomas Gallant in an apparent effort to overcome these factual roadblocks to the succor provided dealers through § 14-60. The potential value of Gallant's affidavit is inherently weakened by its lack of reference to his relationship with Brothers' Toyota, Inc., or to his personal participation in the transactions that led Kohli to drive a Brothers' vehicle at the time of this incident. This affidavit contains conclusions and opinions, perhaps based on Gallant's own experience and first-hand observations, perhaps based upon deductions made after second-hand evaluation of such documents as those that have been presented to the court. A careful review of the affidavit fails to reveal any specific facts establishing whether Gallant was, for instance; a principal in the Brothers' enterprise who had knowledge of personnel, mechanical and business matters; an individual who was expected to benefit from any part of the transactions reported therein; or an independent and unbiased witness to these events.[10]
CT Page 11069 Without these valuable factors, the affidavit fails to persuade the court that Gallant's conclusions represent anything more than one person's view of the facts. As such, the affidavit fails to remove the existence of questions concerning the genuine issues of material fact raised through the complaint's allegations of agency and liability of third parties.
Brothers' thus has failed to establish, as a matter of law, that §14-60 applies to the factual circumstances of this case. The court has identified multiple issues which must be resolved by the trier of fact before the implications of that statute can be determined. In the face of such factual issues, the motion for summary judgment cannot be sustained on this ground. Home Ins. Co. v. Aetna Life Casualty, supra,235 Conn., 202; United Oil Co. v. Urban Development Commission, supra, 158 Conn., 378-79.
 II EFFECT OF § 14-154a UPON THE RELATIONSHIP BETWEEN BROTHERS' AND KOHLI
The plaintiff claims that even if § 14-60 should, in some way, protect Brothers' under the circumstances of this case, he should be permitted to proceed under an alternative theory of liability, which would impose of vicarious responsibility upon Brothers' through the effect of § 14-154a.[11] Brothers' argues that "[s]ince the subject vehicle was not rented or leased to Mr. Kohli, Connecticut General Statute §14-154a is not applicable as a matter of law." Brothers' Reply Brief (#117), supra. Brothers specifically claims that because Kohli paid no money for the use of its loaner vehicle, the dealer could not, as a matter of law, occupy the status of a lessor or renter within the meaning of § 14-154a. Id. The plaintiff counters with reliance upon the public policy underlying this statute, claiming that Brothers' liability would be consonant with the acts of the legislature which "has imposed broad liability for many years on lenders of automobiles for injuries arising out of the misuse of their automobiles." (Quotation marks and citation omitted.) Memorandum of Law Supporting Plaintiff's Objection (#115)[12] The court finds that under the circumstances of this case, viewed in the light most favorable to the plaintiff, Kohli's use of the Brothers' vehicle, while awaiting the delivery of his new Camry, clearly supports the existence of a constructive lease situation, permitting the imposition of such liability as is contemplated by § 14-154a.
While this specific issue has not yet been addressed at the appellate level, the court has paid heed to the cogent elucidation of similar summary judgment issues recently raised before the trial court inKlimaszewski v. Lewis, Superior Court, judicial district of New Haven at CT Page 11070 Meriden, Docket No. CV99-0266089 (May 30, 2000; Levine, J.). The litigation in Klimaszewski v. Lewis involved a wrongful death action brought against the defendant auto repair shop, which owned the vehicle that whose operated by its patron caused the plaintiffs decedent to sustain her fatal injuries. The plaintiff's claims against the repair shop were based on the provisions of § 14-154a.[13] The repair shop countered that this statute could not apply because, although the patron was using the shop's vehicle with its permission, the patron had not paid money for the privilege of driving that vehicle, and that without the exchange of funds, no lessor/lessee relationship could exist to support the operation of § 14-154a.[14] In evaluating this argument, Judge Levine considered the broad issue of whether the use of a motor vehicle, by a patron of a retail establishment, could rise to the level of a § 14-154a lease or rental arrangement even though no monetary consideration had passed hands. Relying upon a traditional contract analysis, the court explicitly rejected the claim that monetary compensation would be necessary to support a lease, within the purview of § 14-154a. Id.
This court concurs, finding that a traditional contract analysis should be used to determine, for summary judgment purposes, whether a lessor/lessee or renter/rentee relationship can exist under the facts of the instant case, as such an analysis is clearly consistent with the spirit and legislative purpose supporting § 14-154a.[15] Under this approach, the court would determine whether any type of consideration had been exchanged by the putative parties to the agreement for use of an owner's vehicle, as "consideration, rather than compensation, is the sine qua non of a lease. Accordingly, the issue is whether the plaintiff may be able to establish a consideration, other than compensation, as a basis for the court to conclude that the agreement [allowing use of the vehicle] was a rental agreement or lease." Klimaszewski v. Lewis, supra.
In Klimaszewski, it is apparent that the plaintiff had specifically alleged that the repair shop was the lessor of the vehicle operated by the patron. While such an overt allegation concerning the existence of a lease is not present in the instant complaint, the lessor/lessee or renter/rentee relationship between Brothers' and Kohli has nonetheless been placed at issue by the plaintiff. Allegation of such a relationship is logically inferred in this matter from the fourth paragraph of the complaint, which states, as noted: "At all times mentioned herein the Defendant, Darshan Kohli, was operating a motor vehicle owned by the Defendant, Brothers' Toyota, Inc., as a leased or rented motor vehicle and said Brothers' Toyota, Inc., is legally liable pursuant to Connecticut General Statutes Section 14-154a, as amended." Pamela B. v.Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998) ("What is necessarily implied [in an allegation] need not be expressly alleged."). CT Page 11071
Given the purchase order representing Kohli's intention to buy a new Camry from Brothers', and given the fact that Brothers' made the loaner car available for Kohli's use "until delivery" of the Camry, it is reasonable to further conclude that Brothers' "must have perceived some good business reason for providing a vehicle to [Kohli] without compensation. . . . [S]uch a business reason may be a basis for a jury to infer consideration [to Brothers' from Kohli]." Klimaszewski v. Lewis, supra. For instance, a jury might reasonably determine, based on these facts, that the patronage of Kohli, in deciding to proffer his old vehicle as a trade-in at Brothers' Toyota, Inc. and in agreeing to purchase a brand new replacement automobile from that dealer, even though it was not immediately available in stock and had to be ordered, constitutes sufficient consideration to support a constructive lease of the Brothers' vehicle by Kohli. Id. Under this analysis, such consideration would be adequate to support the existence of a contractual arrangement between Kohli and the car dealer that would implicate the liability provisions of § 14-154a for Brothers', the "person renting or leasing to another any motor vehicle owned by him." § 14-154a. Such an inference and conclusion would be well based in fact, and sufficient to overcome Gallant's conclusory statement that "at no time did Darshan Kohli rent or lease the subject vehicle from Brothers' Toyota." Affidavit of Thomas Gallant, dated November 17, 1999, ¶ 13.
The defendant urges the court to rely upon the limited interpretation of the terms "rented or leased" as construed by the Connecticut Supreme Court in Graham v. Wilkins, 145 Conn. 34, 138 A.2d 705 (1958). That matter concerned construction of the predecessor to our present rental car statute, and actually serves to support the plaintiff's position in the present case. Following a verdict for the plaintiff in Graham v.Wilkins, the defendant lessor/owner appealed, claiming that because the operator had paid a below-market rate for the use of the vehicle at issue, liability could not be imposed under the pertinent rental car legislation. Id., 37, 38. Addressing the defendant's claims and affirming that the plaintiff had presented evidence that some payment had been made to the lessor/owner in exchange for the use of the vehicle, the court held that whether the amount of compensation for the use of a rental vehicle "was profitable or unprofitable to the defendant [lessor/owner] would not be conclusive of its character" Id., 38-39. The court commented that "whether the defendant felt that it was good business for her to rent the truck to the company for the out-of-pocket operating cost, or even for a lesser amount, was a matter for her to determine. She could not nullify what would otherwise be a rental agreement merely by making the rental low." (Emphasis added.) Id. The principles of Graham v.Wilkins, read in the context of the public purpose behind § 14-154a, thus supports the identification of good will, beneficial business CT Page 11072 practices, absent the exchange of monetary consideration, as the basis for constructing a motor vehicle rental or lease contract in a case where below-market compensation, alternative or intangible forms of compensation, serve as the consideration for a party's use of the vehicle which causes injuries to another. Id.; see also Klimaszewski v. Lewis; footnote 14, above.
Applying that analysis to the facts of this case, neither the lack of a stated amount of monetary compensation for Kohli's use of the Brothers' vehicle, nor Gallant's opinion, serve as a matter of law to establish that the arrangement between these parties lacked consideration to support a rental agreement or lease. Graham v. Wilkens, [Wilkins], supra, 145 Conn. 38-39; Klimaszewski v. Lewis, supra. Whether there was a rental agreement or lease between Brothers' and Kohli, sufficient to implicate the provisions of § 14-154a, presents a genuine issue of material fact, which has not been resolved by the exhibits presented to the court in support of the pending motion. Id. Brothers', as the movant, has the "burden of showing the non-existence of any material fact . . . Home Ins. Co. v. Aetna Life Casualty, supra, 235 Conn. 202. Brothers' has failed to meet its burden insofar as this aspect of the plaintiffs case is concerned, and therefore, cannot prevail on this aspect of its motion for summary judgment.
 III EFFECT OF § 52-183 UPON THE RELATIONSHIP BETWEEN BROTHERS' AND KOHLI
The plaintiff further claims that even if § 14-60 could to some extent shield Brothers' from direct liability, he should be permitted to proceed under a second alternative theory of liability, imposing vicarious responsibility upon Brothers' through the effect of § 42-183.[16]
Brothers' argues that "[t]he co-defendant Darshan Kohli was not a servant or agent of Brothers' Toyota. Therefore, Brothers' Toyota cannot be held liable pursuant to Connecticut General Statute § 52-183." Brothers' Reply Brief (#117), supra.[17] In opposing this argument, the plaintiff apparently relies upon the evidentiary presumption created by the statute, claiming that Kohli's agency status cannot be resolved until the time of trial. Memorandum of Law Supporting Plaintiff's Objection (#115), supra. The court finds that under the circumstances of this case, Kohli's use of the vehicle, while awaiting the delivery of his Camry, clearly permits the inference that a constructive agency situation existed between this defendant and Brothers'. Such an agency relationship would allow the imposition of such vicarious liability as is contemplated by § 52-183.[18] The existence of such a reasonable and logical inference raises a genuine issue of material fact, thus rendering summary CT Page 11073 judgment inapposite in this case.
The moving defendant correctly notes that "[a]n agency relationship between Brothers' Toyota and Darshan Kohli must exist before liability can attach to the defendant car dealership." Brothers' Reply Brief (#117), supra. The plaintiff does not contest Brothers's claim that Kohli was not an employee of that dealership at the time this incident occurred. Brothers' also claims, however, that "the essential elements of an agency relationship are absent" in this case," as it had not limited Kohli's use of the vehicle in any significant way. Id. Such a construction of the facts underlying Kohli's use of the loaner vehicle, however, is disputed by the very exhibits tendered by the Brothers' in support of its motion. Through the Agreement form, Brothers' admits that Kohli did not have free and unfettered use of the it's loaner car, as he was required "not to allow anyone else to drive the said vehicle," to execute specific and detailed steps in the event of an accident, and he became obligated to return the loaner car to Brothers' and to discontinue its use after delivery of the Camry.
A reasonable interpretation of the facts at issue thus indicates that the terms of Kohli's use of the loaner vehicle could well establish the basis of an agency relationship between this defendant and Brothers. Kohli's use of the vehicle was definitively restricted by the text of the Agreement form provided by Brothers'; Kohli would be permitted to use the loaner car only while awaiting Brothers's perfection of the Camry purchase, which was to the dealer's benefit; although Kohli may not have received monetary compensation from Brothers' for any acts performed while using of this vehicle, he could easily be seen to have been promoting and securing the Business of Brothers' while patiently awaiting the delivery of his new car; Kohli agreed to the limited terms of the vehicle's use, thus accepting the undertaking; and Kohli himself was operating the loaner car at the time of the accident complained of; well within the control over the vehicle's use that as imposed by the principal, and pursuant to the terms established by Brothers'. These fundamental agency criteria are amply supported by the exhibits now before the court and, if credited by the jury, would fulfill all the requirements of establishing an agency relationship under the legal standards promoted by Brothers. Id., citing Restatement (Second), 1 Agency 1, comment b (1958), Beckenstein v. Potter Carrier, Inc.,191 Conn. 120, 133, 464 A.2d 6 (1983). This agency status would well support the application of § 52-183 to the facts of this case.
The evidentiary presumption of agency created by § 52-183 must be rebutted by the defendant, and Brothers' has failed to meet that burden through the exhibits submitted in support of its motion for summary judgment. Gallant's affidavit presents conclusory statements which may be CT Page 11074 seen as controverted through a reasonable interpretation of the circumstances of this case. Brothers' had agreed to provide "Kohli with a loaner vehicle until delivery of his new vehicle"; Affidavit of Thomas Gallant, dated November 17, 1999, ¶ 8; which formed the foundation for the benefit to Brother discussed in Part II, above. Under the totality of the circumstances presented at this stage of the litigation, the court has viewed the evidence in the light most favorable to the nonmoving party." Hertz Corp. v. Federal Ins. Co., supra, 245 Conn. 381. Seen in this light, the relationship between Kohli, Brothers' and the loaner vehicle is clearly subject to multiple factual interpretations. As such, the issue of the relationship between the parties and the vehicle presents a genuine issue of material fact which vitiates the grounds upon which this the defendant's motion for summary judgment was based. As Brothers' has failed to meet its "burden of showing the non-existence of any material fact" relating to the subject of Kohli's agency, within the meaning of § 52-183, this aspect of the defendant's argument must fail. Home Ins. Co. v. Aetna Life Casualty, supra, 235 Conn. 202.
WHEREFORE, the defendant Brother's Toyota, Inc.'s Motion for Summary Judgment (#120) is hereby DENIED.
BY THE COURT,
N. Rubinow, J.