******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CASEY LEIGH RUTTER *v.* ADAM JANIS ET AL.
(AC 38699)

NANCY BEALE, ADMINISTRATRIX (ESTATE OF
LINDSEY BEALE) *v.* LUIS MARTINS ET AL.
(AC 38792)

JASON FERREIRA *v.* LUIS MARTINS ET AL.
(AC 38793)

Keller, Elgo and Bear, Js.

*Syllabus*

The plaintiffs, in three separate actions, sought to recover damages from
the defendant D Co., an automobile dealership, for personal injuries
sustained in a motor vehicle accident. On May 9, 2013, the defendant
M had purchased an automobile from D Co., but because the parties
could not complete the transfer of the motor vehicle registration from
M's previous vehicle to the new one, D Co. loaned a dealer plate number
to M while the registration process was pending, and a loan agreement
was signed at approximately 7 p.m. on that day. On June 8, 2013, at
approximately 3 p.m., M was driving the vehicle when it was involved
in an accident, injuring certain of the plaintiffs who were passengers.
Pursuant to statute (§ 14-60), D Co. was permitted to loan a dealer
number plate to M, as a purchaser of a vehicle, for a period of not more
than thirty days while the registration of the new vehicle was pending,
and a dealer that has complied with the requirements of § 14-60 is not
liable for damages caused by the insured operator of the motor vehicle
while it is displaying the loaned dealer number plate. The plaintiffs
alleged that D Co. was liable for damages resulting from the accident
because it occurred beyond the thirty day period set forth in § 14-60.
D Co. filed three substantially similar motions for summary judgment
in each case, which the trial court granted, asserting that the accident
occurred within the thirty day time period pursuant to § 14-60 and that
it had complied with the requirements of the statute. From the judgments
rendered thereon, the plaintiffs filed three appeals to this court, which
consolidated the appeals. The plaintiffs claimed, inter alia, that the trial
court erred in its computation of the thirty day period in § 14-60 (a) (3),
which was based on their claim that the thirty day period began on the
date the loan agreement was signed, and not the following day. *Held:*

1. The trial court properly granted D Co.'s motions for summary judgment
and determined that the accident did not occur more than thirty days
after the execution of the loan agreement; even if the thirty day period
set forth in § 14-60 (a) began at approximately 7 p.m. on May 9, 2013,
the only way for the thirty day period to have expired before June 8,
2013, the date of the accident, was if the five hours remaining in the
day after the execution of the loan agreement were counted as one full
day, and that was contrary to relevant precedent, which holds that when
a period of time is to be calculated from a particular date or event, the
day of such date or event is excluded from the computation, and because,
on the basis of the general rule for the computation of days and the
common understanding of a day, as used in case law, May 10, 2013, was
the first day of the thirty day period, the accident on June 8, 2013
occurred not more than thirty days following the loan agreement and
was within the time limit set forth in § 14-60 (a), and D Co., thus, was
entitled to protection against liability to the plaintiffs.

2. The plaintiffs could not prevail on their claim that genuine issues of
material fact existed concerning whether D Co. had failed to comply
with two other requirements of § 14-60 (a) for protection from liability;
the trial court did not err in concluding that D Co. had met its burden
in demonstrating that the parties to the loan agreement intended for it
to loan the dealer number plate for up to thirty days while the registration
was pending, D Co. complied with the requirements of § 14-60 (a) by
obtaining proof of insurance from M for that period of time, and the
accident occurred within that time period, and although the parties

failed to designate on the loan agreement form, via a check in a box, the specific category of the loan, the undisputed evidence submitted in support of the motions for summary judgment was that M did not borrow the dealer number plate to test drive a vehicle and did not have a vehicle that was undergoing repairs.

Argued October 16, 2017—officially released March 6, 2018

*Procedural History*

Action, in the first case, to recover damages for personal injuries sustained as a result of the defendants' alleged negligence, and action in the second case, to recover damages for the wrongful death of the plaintiff's decedent as a result of the defendants' alleged negligence, and action in the third case, to recover damages for personal injuries sustained as a result of the defendants' alleged negligence, brought to the Superior Court in the judicial district of Waterbury, where the cases were consolidated; thereafter, the court, *Brazzel-Massaro, J.*, granted the motions for summary judgment filed by the defendant Danbury Fair Hyundai, LLC, in each case and rendered judgments thereon, from which the plaintiff in each case filed separate appeals to this court; subsequently, this court consolidated the appeals. *Affirmed.*

*James J. Healy*, with whom were *Joel T. Faxon* and *Cynthia C. Bott*, and, on the brief, *Nathan C. Nasser* and *J. Craig Smith*, for the appellants (plaintiff in each case).

*James F. Shields*, with whom, on the brief, was *David M. Houf*, for the appellee (defendant Danbury Fair Hyundai, LLC).

*Opinion*

BEAR, J. In these consolidated appeals,[1] a principal issue in each of the cases is the meaning and application of the phrase "not more than thirty days" set forth in General Statutes § 14-60 (a).[2] The trial court, in rendering summary judgment in each of the three consolidated cases, from which the plaintiffs have appealed, interpreted that phrase to require the exclusion of May 9, 2013, the date on which a "Temporary Loan of Motor Vehicles" agreement (loan agreement) between Luis Martins[3] and the defendant Danbury Fair Hyundai, LLC, was executed, from the computation of that thirty day period.[4] The plaintiffs claim on appeal that the court erred in determining that the loan of a dealer number plate,[5] pursuant to the loan agreement for use on a 2013 Hyundai Veloster automobile that the Martins had purchased, did not exceed the thirty day period set forth in § 14-60 (a). The plaintiffs also claim that the court erred in finding that the defendant fully complied with the requirements of § 14-60 (a), resulting in its protection from liability to the plaintiffs. We disagree, and, accordingly, affirm the judgments of the trial court.

The following facts, as set forth in the defendant's memoranda of law in support of its motions for summary judgment and in the plaintiffs' memoranda of law in opposition to summary judgment, are undisputed. On May 9, 2013, Luis Martins and his father, Jorge Martins, purchased a 2013 Hyundai Veloster automobile from the defendant. Because the defendant had not received the automobile manufacturer's certificate of origin, the parties could not complete the transfer of Luis Martins' motor vehicle registration from his previous vehicle, a 2007 Jeep Wrangler vehicle, to the new vehicle. The defendant loaned a dealer number plate to Luis Martins while the registration process was pending. The defendant and Luis Martins signed the loan agreement at approximately 7 p.m. on May 9, 2013.

On June 8, 2013, at approximately 3 p.m., Luis Martins, while driving the Hyundai Veloster automobile, was involved in a motor vehicle accident in Danbury. As a result of the accident, his passengers, Lindsey Beale, Casey Leigh Rutter and Jason Ferreira sustained traumatic injuries; Beale died from her injuries. At the time of the accident, the Hyundai Veloster automobile displayed the dealer number plate belonging to the defendant.

In separately filed complaints, the plaintiffs alleged that the defendant owned or controlled the automobile driven by Luis Martins and was, therefore, liable for any damages resulting from the June 8, 2013 accident. On February 17, 2015, the defendant filed a substantially similar motion for summary judgment in each case, asserting that it was not liable to any of the plaintiffs because the accident occurred "twenty-nine days and

[twenty] hours after the plates were loaned out, and thus well within the thirty day period of time required by Connecticut law." Attached as evidence in support of its motion, the defendant included an affidavit from William Sabatini, the chief financial officer of the defendant; a temporary insurance identification card issued to the Martins by Allstate Fire and Casualty Insurance Company for the Hyundai Veloster automobile with an effective date of May 9, 2013; an insurance declaration page for that automobile; copies of the Martins' drivers' licenses; a registration certificate and insurance identification card for Luis Martins' previous vehicle; a completed department of motor vehicles registration form for the 2013 Hyundai Veloster automobile signed by the Martins and dated May 9, 2013; purchase and finance documents relating to the sale of the 2013 Hyundai Veloster automobile, including a manufacturer's certificate of origin dated April 15, 2013; and the signed loan agreement. The plaintiffs filed a substantially similar memorandum of law in each of the cases in opposition to the motions for summary judgment, claiming, inter alia, that genuine issues of material fact existed regarding whether the defendant complied with the requirements of § 14-60 (a), and that the period of the loan agreement exceeded the thirty day time limit set forth in § 14-60 (a) (3). The sole evidence attached to their opposition memoranda was a transcript excerpt from Sabatini's January 6, 2015 deposition.

On November 27, 2015, the court issued a memorandum of decision rendering summary judgment in favor of the defendant in each of the cases. The court found that the defendant "satisfied its obligations pursuant to [§ 14-60] in that the Martins provided proof of valid insurance coverage during the dates of May 9, 2013, and June 19, 2013," and that the Martins "had possession of the loaner vehicle for [twenty-nine] days and [twenty] hours at the time of the accident as they were awaiting the pending registration for the new vehicle." Accordingly, the court concluded that the defendant complied with § 14-60 and was protected from liability for the accident. These consolidated appeals followed.

We first set forth our standard governing review of a trial court's decision to grant a motion for summary judgment. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evi-

dentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012).

Additionally, because this appeal involves questions of statutory construction, we set forth our well established principles of statutory interpretation. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Connecticut Energy Marketers Assn.* v. *Dept. of Energy & Environmental Protection*, 324 Conn. 362, 372–73, 152 A.3d 509 (2016). "Statutory interpretation is a question of law, over which our review is plenary." *Gomes* v. *Massachusetts Bay Ins. Co.*, 87 Conn. App. 416, 423, 866 A.2d 704, cert. denied, 273 Conn. 925, 871 A.2d 1031 (2005).

I

On appeal, the plaintiffs assert that the court erred in its computation of the days in the § 14-60 (a) (3) thirty day period because it began on May 9, 2013, the day the loan agreement was signed, and not on May 10, 2013, the following day. Because § 14-60 (a) (3) limits the temporary loan of a dealer number plate to "not more than thirty days in any year," the plaintiffs maintain that the defendant is liable to them because the Hyundai Veloster automobile displayed the dealer number plate when the accident occurred on June 8, 2013, which they allege was the thirty-first day after the loan of the plate.

"[Section 14-60] reflects the legislative effort to protect the public from reckless driving of loaned motor vehicles. . . . By giving an injured person the statutory right to recover from the borrower's insurer when the borrower is at fault, § 14-60 (a) provides an incentive to those who test drive motor vehicles to drive with the same care that they would exercise if they were driving a motor vehicle they owned." (Citation omitted.) *Sandor* v. *New Hampshire Ins. Co.*, 241 Conn. 792, 798,

699 A.2d 96 (1997). Section 14-60 "permits an automobile dealer to lend a dealer [number] plate to a purchaser of a motor vehicle, for a period not to exceed [thirty] days, while the purchaser's registration is pending . . . ." *Cook* v. *Collins Chevrolet, Inc.*, 199 Conn. 245, 249, 506 A.2d 1035 (1986). A dealer that has complied with the requirements set forth in § 14-60 is not liable for damages caused by the insured operator of the motor vehicle while that vehicle is displaying the loaned dealer number plate. Id.

The loan agreement was signed at approximately 7 p.m. on May 9, 2013. The accident occurred at approximately 3 p.m. on June 8, 2013. Depending on the method used to calculate the thirty day period set forth in § 14-60 (a), the accident occurred within or beyond the thirty day period. For example, if, as the plaintiffs argue, May 9, 2013, the date of the execution of the loan agreement, is included as the first day of the thirty day period, the accident occurred on the thirty-first day after such execution. If May 9, 2013, is not included as one of the thirty days, however, and the first day of the thirty day period begins on May 10, 2013, as the defendant argues, the accident would have occurred on the thirtieth day.

The plaintiffs argue that the parties intended for the loan of the dealer number plate to begin on May 9, 2013, and that common sense dictates that insurance coverage began the moment the vehicle left the defendant's lot. Specifically, the plaintiffs posit that by excluding May 9, 2013 in the counting of the thirty day period, "if the borrowing driver were to crash while driving off the lot or later that same day, then [§ 14-60] would not protect the dealer because the loan would not yet have begun." (Internal quotation marks omitted.) As evidence in support of the parties' intent, the plaintiffs submitted a transcript excerpt from Sabatini's deposition, in which he stated that May 9 was the first day of the Martins' loan period.[6] In its memorandum of decision, the court determined that the plaintiffs' argument that "the court must accept the first date" is "contrary to [our] case law . . . ." Nevertheless, the court noted, even if it accepted, arguendo, the plaintiffs' argument, and used twenty-four hour periods beginning from 7 p.m. on May 9, 2013, to calculate the thirty day period, "the [Martins] had possession of the loaner vehicle for [no more than] [twenty-nine] days and [twenty] hours at the time of the accident . . . ."

We agree with the court that the accident did not occur more than thirty days after the execution of the loan agreement even if the thirty day period set forth in § 14-60 (a) began at approximately 7 p.m. on May 9, 2013. The only way for the thirty day period set forth in § 14-60 (a) to have expired before June 8, 2013, the date of the accident, was if the five hours remaining in the day after the execution of the loan agreement at approximately 7 p.m. on May 9, 2013, were counted as

one full day, and no relevant Connecticut precedent was offered by the plaintiffs in support of this approach.[7]

Section 14-60 (a) (3) provides in relevant part that "[n]o dealer or repairer may loan a motor vehicle or number plate . . . for not more than thirty days in any year . . . ." It appears that neither the computation method nor the interpretation of the phrase "not more than thirty days" contained in § 14-60 (a) (3) has been previously discussed by our appellate courts. We are mindful that "[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly. General Statutes § 1-1 (a). Where a statute does not define a term, it is appropriate to look to the common understanding expressed in the law . . . ." (Internal quotation marks omitted.) *Police Department* v. *State Board of Labor Relations*, 225 Conn. 297, 301 n.6, 622 A.2d 1005 (1993).

Neither § 14-60 nor title fourteen of the General Statutes includes a definition for the word "day." The statute also does not specify how to count days in order to meet the "not more than thirty days in any year" requirement. Our case law, however, beginning 200 years ago, provides for the general definition of a day. "It is a well known rule of the common law, that a day comprises twenty-four hours, extending from midnight to midnight, including morning, evening and night, and is called the natural day. When a day is spoken of in law, it comprehends that period of time. When an act is to be done on a particular day, it may be done at any time between those hours." *Fox* v. *Abel*, 2 Conn. 541, 542 (1818).

Approximately 125 years ago, our Supreme Court in *Miner* v. *Goodyear Glove Mfg. Co.*, 62 Conn. 410, 26 A. 643 (1892), also addressed the meaning of the word "day" in a statute. The court concluded that "[t]he current of authorities is substantially unvarying to the effect that when the word 'day' is used in a statute or in a contract, it will, unless it is in some way restricted, be held to mean the whole twenty-four hours. Thus, when the statute above quoted fixes the period of sixty days, it must be taken to mean days in the sense of the law. . . . The day on which the proceedings were commenced must be excluded. For the day and the act being coterminous and of equal length, nothing could precede the act that did not also precede the day." (Citations omitted.) Id., 411.

Approximately 95 years ago, our Supreme Court in *Austin, Nichols & Co., Inc.* v. *Gilman*, 100 Conn. 81, 84, 123 A. 32 (1923), considered the issue of computation of days where a statute provided that a notice of intention had to be recorded in the town clerk's office not less than fourteen days prior to a sale. It similarly deter-

mined that "[u]nless settled practice or established custom, or the intention of the parties, or the terms of a statute, have included in the computation the date or act of accrual, it is to be excluded from the computation. This is not only our established rule, but the rule established by modern authority, applicable to all kinds of instruments, to statutes, and to rules and orders of court."[8]

Our courts have consistently followed this computation method. See, e.g., *Commissioner of Transportation* v. *Kahn*, 262 Conn. 257, 264, 811 A.2d 693 (2003) ("we are guided by the general rule . . . that where a period of time is to be calculated from a particular date or event, the day of such date or event is excluded from the computation" [internal quotation marks omitted]); *Lamberti* v. *Stamford*, 131 Conn. 396, 397–98, 40 A.2d 190 (1944) ("[i]t is well settled that the day of the act from which a future time is to be ascertained is to be excluded from the computation"); and *Wikander* v. *Asbury Automotive Group/David McDavid Acura*, 137 Conn. App. 665, 671–72, 50 A.3d 901 (2012) ("for purposes of determining when a filing period runs, we generally do not count the first day, the day of the act"); see also, annot., 98 A.L.R.2d 1338, § 3 (1964) ("[i]n the absence of anything showing an intention to count only 'clear' or 'entire' days, it is generally held that in computing the time for performance of an act or event which must take place a certain number of days before a known future day, one of the terminal days is included in the count and the other is excluded").[9]

The plaintiffs do not dispute the date and time on which the loan agreement was signed, or the date and time of the accident. Accordingly, viewing the evidence in the light most favorable to the plaintiffs, there are no genuine issues of material fact regarding the thirty day period to be applied pursuant to § 14-60 (a). The resolution of this claim depends, instead, on the legal issue of whether the computation of time starts on May 9, 2013, the date of the execution of the loan agreement, or on May 10, 2013, the first full day after such execution. On the basis of our general rule for the computation of days and the common understanding of a "day" as used in our case law, May 10, 2013, is the first day of the thirty day period. The accident on June 8, 2013, occurred not more than thirty days following the loan agreement and, therefore, was within the statutory time limit set forth in § 14-60 (a).[10] Because the accident occurred within the thirty day period set forth in § 14-60 (a), the defendant is entitled to its protection against liability to the plaintiffs.

II

The plaintiffs also claim that genuine issues of material fact exist in that the defendant failed to comply with two other requirements of § 14-60 (a) for protection from liability.[11] As support for their claim, they

assert that the loan agreement submitted into evidence did not contain a selection of one of the three available options: "service customer," "prospective buyer," or "registration pending."[12] These terms parrot the options set forth in §§ 14-60 (a) (1), (2) and (3). The plaintiffs additionally claim that since the vehicle registration process was not completed until June 10, 2013, because the registration was not "pending," as required by § 14-60 (a) (3), until two days after the accident.

With respect to the plaintiffs' first claim, there is nothing in § 14-60 (a) that requires a written selection of one of the three statutory options, each of which contemplates the use of dealer number plates on vehicles for a limited duration. In this case, it is not disputed that the dealer number plate was going to be displayed on the new automobile that the Martins had purchased, and not on a vehicle to be used by them while their vehicle was being serviced, or on a vehicle being demonstrated to them. Additionally, with respect to the use of a dealer number plate pursuant to § 14-60 (a), it is clear that this statute is intended both to encourage dealers to ensure that the customer has insurance coverage; see *Cook* v. *Collins Chevrolet, Inc.*, supra, 199 Conn. 250–52; which requirement was indisputably satisfied in this case, and to encourage the user of the dealer number plate to drive with care. See *Sandor* v. *New Hampshire Ins. Co.*, supra, 241 Conn. 798.

With respect to the plaintiffs' second claim, the plaintiffs assert that the Martins' registration for the Hyundai Veloster automobile was a transfer of an existing registration and not a new "pending" registration under § 14-60 (a) (3).[13] We have not found any appellate interpretation of "pending registration" as set forth in § 14-60 (a). We, however, do not accept the plaintiffs' narrow interpretation of that statute, which would permit the loan of dealer number plates only for new pending registrations of purchased vehicles and not for the transfer of registrations between vehicles in connection with a purchase of a new vehicle. In other words, to accept the plaintiffs' interpretation and limit § 14-60 (a) (3) only to new registrations would mean that any purchaser of a motor vehicle from a dealership who also trades in a vehicle or transfers the number plates from an old vehicle to a new vehicle, would not be able to borrow a dealer number plate while the registration process was pending. "The purpose of [§ 14-60] is to make effective the statutory provision to require the registration of motor vehicles and to prevent avoidance thereof. . . . It was not intended that others, under cover of the general number or distinguishing mark of the dealer, should be able to operate cars belonging to or controlled by themselves." (Citations omitted; internal quotation marks omitted.) *State* v. *Baron Motors, Inc.*, 2 Conn. Cir. Ct. 378, 381, 199 A.2d 355 (1964). Simply put, the statute permits the loan of dealer number plates, for a limited time, to a person who purchased

a vehicle from the dealer, while waiting for that vehicle to be registered with the department of motor vehicles, or otherwise pending the registration process. The circumstances of the present case are akin to *Cook* v. *Collins Chevrolet, Inc.*, supra, 199 Conn. 247, where in that case, the dealer loaned a dealer number plate to the purchaser of a truck while the registration for the truck was pending. The truck owner was involved in an accident within the time period permitted under § 14-60 (a) (3) and the truck owner subsequently registered the truck in his own name two days after the accident. Id.

The court did not err in concluding that the defendant met its burden in demonstrating that the parties to the loan agreement intended for the defendant to loan the dealer number plate for up to thirty days while the registration was pending because of the missing certificate of origin for the newly purchased vehicle. The defendant complied with the requirements of § 14-60 (a) by obtaining proof of insurance from the Martins for that period of time. As discussed in part I of this opinion, the accident occurred within that time period. The plaintiffs have not demonstrated the existence of any genuine issues of material fact that contradict the defendant's compliance with § 14-60 (a). Although the parties failed to designate on the loan agreement form, via a check in a box, the specific category of the loan, the undisputed evidence submitted in support of the motions for summary judgment was that the Martins did not borrow the dealer number plate to test drive a vehicle nor did they have a vehicle undergoing repairs. There are no other relevant factors that would raise a genuine issue of material fact regarding the defendant's compliance with § 14-60. See *Cook* v. *Collins Chevrolet, Inc.*, supra, 199 Conn. 252 (dealer entitled to summary judgment because of its full compliance with § 14-60 when purchaser was involved in accident with vehicle displaying dealer number plate while registration was pending). Accordingly, the court properly rendered summary judgments in favor of the defendant against each of the plaintiffs.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] In AC 38699, the plaintiff, Casey Leigh Rutter, commenced an action against the defendants Luis Martins, Jorge Martins, Danbury Fair Hyundai, LLC, Adam Janis, Eagle Electric Service, LLC, and State Farm Automobile Insurance Company.

In AC 38792, the plaintiff, Nancy Beale, Administratrix of the Estate of Lindsey Beale, commenced an action against the defendants Luis Martins, Jorge Martins, Danbury Fair Hyundai, LLC, Adam Janis and Eagle Electric Service, LLC.

In AC 38793, the plaintiff, Jason Ferreira, commenced an action against the defendants Luis Martins, Jorge Martins, Danbury Fair Hyundai, LLC, Adam Janis and Eagle Electric Service, LLC.

The complaints arise out of the same motor vehicle accident. The plaintiffs filed a motion to consolidate the three appeals, which this court granted on June 28, 2016. For the purposes of this opinion, all three plaintiffs will be collectively referred to as the plaintiffs.

[2] General Statutes § 14-60 (a) provides in relevant part: "No dealer or repairer may loan a motor vehicle or number plate or both to any person except for . . . (3) when such person has purchased a motor vehicle from such dealer, the registration of which is pending, and in any case for *not more than thirty days in any year*, provided such person shall furnish proof to the dealer or repairer that he has liability and property damage insurance which will cover any damage to any person or property caused by the operation of the loaned motor vehicle, motor vehicle on which the loaned number plate is displayed or both. Such person's insurance shall be the prime coverage. If the person to whom the dealer or repairer loaned the motor vehicle or the number plate did not, at the time of such loan, have in force any such liability and property damage insurance, such person and such dealer or repairer shall be jointly liable for any damage to any person or property caused by the operation of the loaned motor vehicle or a motor vehicle on which the loaned number plate is displayed. . . ." (Emphasis added.) See generally *Cook* v. *Collins Chevrolet, Inc.*, 199 Conn. 245, 506 A.2d 1035 (1986).

[3] Although Jorge Martins, who is described in the court's memorandum of decision as Luis Martins' father, did not sign the loan agreement, it is undisputed that he was a co-owner of the 2013 Hyundai Veloster automobile that was the subject of that agreement. We thus refer at times to both of them in connection with the purchase of that automobile and use of the defendant's dealer number plate.

[4] Danbury Fair Hyundai, LLC, filed the motions for summary judgment; therefore, in this opinion Danbury Fair Hyundai, LLC, will be referred to as the defendant. The other defendants, Luis Martins, Jorge Martins, Adam Janis, Eagle Electric Service, LLC, and State Farm Automobile Insurance Company are not parties to this appeal and will be referred to by name.

[5] In its memorandum of decision, the court referred to the loan of a "dealer plate." For the purposes of this opinion, we will refer to a number plate as a "dealer number plate."

[6] Section 14-60 (a) (3) requires that the person loaned a dealer number plate must provide proof of insurance to the dealer, which will cover, from the time of such loan, any damage to any person or property caused by the operation of the motor vehicle on which the loaned dealer number plate is displayed. Thus, the computation of time for insurance coverage purposes can be different from the computation of the statutory thirty day use limitation. See footnote 7 of this opinion.

[7] If such five hours were accepted as the first day, the period of the loan agreement in real time would be less than thirty days; it would be twenty-nine days and five hours in this case. Generalizing and applying the plaintiffs' suggested computation of the statutory thirty day period, the first day always would be less than a full day unless the operative act occurred on or before 12:01 a.m. on the day of that act. Pursuant to our precedent as discussed in this opinion, § 14-60 (a) (3) provides for thirty full days of use of a dealer number plate, even if it means that the total time of use exceeds thirty days by some amount of time less than a full day.

[8] The statute also provided that a bill of sale had to be filed for record at least fourteen days prior to the sale. The court held that the phrase "at least fourteen days" evidenced the intent of the legislature that the period should be fourteen full or clear days, and both the first and last days had to be excluded in making the computation. *Austin, Nichols & Co., Inc.* v. *Gilman*, supra, 100 Conn. 85.

[9] In its memorandum of decision, the court, quoting *Midland Funding, LLC* v. *Garrett*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-11-6011332-S (December 23, 2011) (53 Conn. L. Rtpr. 161), noted: "In general there are four ways of counting days; (1) [c]ount no terminal days (beginning day or ending day); (2) [c]ount only one terminal day; (3) [c]ount both terminal days; and (4) [u]sing one of the above methods but count only business days." The approach to be used in a particular case, according to the court, is to be determined by one or more of the following: "statute, Practice Book rule and the language surrounding the mention of days in statutes, regulations, rules, contracts and case law." In this case, we rely primarily on our case law precedent.

[10] Because some sections of title fourteen of the General Statutes contain provisions that set hourly time measurements, they logically demonstrate that the legislature knows how to use a measurement of time other than a day when it intends to do so. See, e.g., General Statutes § 14-274 (prohibiting commercial drivers from operating motor vehicle if they have been on duty "more than sixteen hours in the aggregate in any twenty-four-hour period");

General Statutes § 14-382 (owners of snowmobiles or all-terrain vehicles required to file change of address with commissioner "[w]ithin forty-eight hours"). This court has recognized that "[i]t is a fundamental principle of statutory construction that courts must interpret statutes using common sense and assume that the legislature intended a reasonable and rational result." (Internal quotation marks omitted.) *Wikander* v. *Asbury Automotive Group/David McDavid Acura*, supra, 137 Conn. App. 672.

Additionally, § 14-60 (a) does not require that the thirty day loan period must occur consecutively. The statutory requirement is that the plate be used "not more than thirty days in any year." It can be reasonably inferred, therefore, that a dealer may loan a dealer number plate in fewer than thirty day increments, so long as the total loan period does not cumulate to more than thirty days in any year. It would add complexity to record keeping, for example, if dealerships had to maintain precise records of loan periods for fractional or partial days, e. g., by hours or minutes. If the legislature had intended to permit fractional hourly or minute counting of the time period, the statute would more likely have stated the time period in hours and/or minutes instead of days. See generally *Gomes* v. *Massachusetts Bay Ins. Co.*, supra, 87 Conn. App. 422–30.

Nevertheless, even if an hourly computation method were permissible in these cases, the accident still occurred twenty-nine days, twenty hours after the execution of the loan agreement at approximately 7 p.m. on May 9, 2013. Using the computation method required by our case law, however, the accident occurred on the fifteenth hour of the thirtieth day, i.e., at approximately 3:00 p.m. on June 8, 2013.

[11] General Statutes § 14-60 (a) provides three purposes for which a dealer or repairer may loan a number plate: "(1) the purpose of demonstration of a motor vehicle owned by such dealer, (2) when a motor vehicle owned by or lawfully in the custody of such person is undergoing repairs by such dealer or repairer, or (3) when such person has purchased a motor vehicle from such dealer, the registration of which is pending . . . ."

[12] As in *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014), even if the parties to the loan agreement did not select one of the three boxes in the loan agreement, that alleged error did not impede the defendant's ability to meet its burden of proving that it was entitled to summary judgment as a matter of law. Id., 401.

In the present case, the plaintiffs were not parties to the loan agreement. "It is well settled that one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract . . . . Under this general proposition, if the plaintiff is neither a party to, nor a contemplated beneficiary of, [the] agreement, she lacks standing to bring her claim for breach of [contract]." (Citations omitted; internal quotation marks omitted.) *Cimmino* v. *Household Realty Corp.*, 104 Conn. App. 392, 395–96, 933 A.2d 1226 (2007), cert. denied, 285 Conn. 912, 943 A.2d 470 (2008).

[13] In support for this assertion, the plaintiffs rely on *Dugay* v. *Brothers' Toyota, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-97-0572734-S (September 11, 2000) (28 Conn. L. Rptr. 69), which, as a Superior Court case, is not binding precedent on this court.