******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KYLE MCCALL *v.* GINA SOPNESKI ET AL.
(AC 42498)

Lavine, Prescott and Elgo, Js.*

*Syllabus*

The plaintiff sought to recover damages from the defendants, S, and R. Co., an automobile dealership, for injuries he sustained when he was struck by a motor vehicle driven by S and owned by R Co., while he was riding his motorcycle. R Co. provided the vehicle to S to use while her own vehicle was being repaired at R Co. R Co. and S entered into an agreement regarding the vehicle, entitled "Subaru Rental Agreement," that provided that the agreement was for a "temporary substitute vehicle." The section of the agreement used for setting forth rental rates and charges was blank. S provided R Co. with proof of a valid automobile insurance policy at the time she signed the agreement. The plaintiff alleged that R Co. was vicariously liable for damages resulting from the accident pursuant to statute (§ 14-154a), because it had entered into a rental agreement with S. R Co. moved for summary judgment, asserting that the motor vehicle was loaned to S and that it was immune from liability pursuant to statute (§ 14-60), because § 14-60 grants immunity to motor vehicle dealers from liability caused by a loaned automobile, so long as the customer has furnished the dealer with proof of liability insurance. The trial court rendered summary judgment for R Co., concluding that R Co. had loaned the vehicle to S and that S had provided R Co. with proof of insurance. The plaintiff appealed to this court, claiming that R Co. was not entitled to the immunity provided by § 14-60 because the motor vehicle did not have a dealer plate and there was a genuine issue of material fact as to whether the motor vehicle had been "loaned" to S. *Held* that the trial court properly concluded that there was no genuine issue of material fact as to whether R Co. was entitled to the immunity provided by § 14-60: the plaintiff's construction of § 14-60, that it applies only to the lending of motor vehicles that have dealer plates affixed, was untenable in light of the plain language of the statute encompassing situations in which a dealer lends either a dealer vehicle, a dealer plate, or a dealer vehicle containing a dealer plate and, thus, the fact that the motor vehicle operated by S had a vanity plate rather than a dealer plate did not operate to preclude the application of § 14-60; moreover, regardless of the label on the agreement between R Co. and S, the essence of the transaction was a loan, as the motor vehicle was given to S for temporary use and S was not charged a fee for the use of the motor vehicle.

Argued November 30, 2020—officially released February 16, 2021

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the named defendant's alleged negligence, brought to the Superior Court in the judicial district of New London where the court *S. A. Murphy, J.*, granted the motion for summary judgment filed by the defendant Reynolds Garage & Marine, Inc., and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*John F. Wynne, Jr.*, with whom, on the brief, was *Joseph N. Schneiderman*, for the appellant (plaintiff).

*Edward N. Storck III*, with whom, on the brief, was *Christopher J. Lynch*, for the appellee (defendant Reynolds Garage & Marine, Inc.).

*Opinion*

ELGO, J. The plaintiff, Kyle McCall, was injured when the motorcycle he was operating was struck by a vehicle operated by the defendant Gina Sopneski and owned by the defendant Reynolds Garage & Marine, Inc., known also as Reynolds Subaru (Reynolds).[1] The plaintiff thereafter served a two count complaint on the defendants, alleging in the first count negligence against Sopneski and in the second count vicarious liability against Reynolds pursuant to General Statutes § 14-154a.[2] The trial court subsequently granted summary judgment in favor of Reynolds on the second count of the complaint,[3] concluding as a matter of law that no genuine issue of material fact existed as to whether Reynolds was immune from liability for Sopneski's actions. On appeal, the plaintiff challenges the propriety of that determination. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to the resolution of this appeal. On May 18, 2017, the plaintiff was operating a motorcycle on Route 154 in Deep River. At the same time, Sopneski was operating a 2014 Subaru motor vehicle (Subaru) on Route 154. When she attempted to make a left-hand turn onto Southworth Street, the Subaru collided with the plaintiff's motorcycle, causing injury to the plaintiff.

At the time of that accident, the Subaru was owned by Reynolds and had been provided to Sopneski on a temporary basis while her own motor vehicle was being repaired. It is undisputed that, prior to obtaining temporary use of the Subaru, Sopneski furnished proof of her automobile insurance to Reynolds and entered into a written agreement with Reynolds regarding the use of the Subaru (agreement).

Following the accident, the plaintiff commenced the present action against the defendants. His complaint contained two counts. Count one alleged negligence on the part of Sopneski.[4] In count two, the plaintiff alleged that Reynolds was vicariously liable for the plaintiff's injuries pursuant to § 14-154a because the defendants had entered into a rental agreement regarding Sopneski's use of the Subaru. In response, Reynolds filed an answer and two special defenses, in which it alleged (1) that Reynolds was immune from liability pursuant to General Statutes § 14-60 "because the [Subaru] . . . was loaned to [Sopneski] for her use while her own vehicle was being repaired" and (2) there was contributory negligence on the part of the plaintiff.

On August 6, 2018, Reynolds moved for summary judgment on count two of the complaint on the ground that it was entitled to judgment as a matter of law because it was immune from liability pursuant to § 14-60, which grants immunity to motor vehicle dealers from liability for any damage caused by a loaned auto-

mobile, so long as the customer has furnished the dealer with proof of liability insurance.[5] On January 4, 2019, the court granted the defendant's motion, concluding that "[t]here is no genuine issue of material fact as to whether the transaction between Sopneski and Reynolds falls within the purview [of] § 14-60." In so doing, the court emphasized that, for two reasons, it construed the agreement between the defendants as a loan of the vehicle, rather than as a rental of it. First, the court noted the undisputed fact that the agreement provided for the use of a "temporary substitute vehicle" while Sopneski's own vehicle was being repaired. Second, the court relied on the undisputed fact that Sopneski was not charged for her temporary use of the substitute vehicle. Accordingly, the court concluded that "[t]he defendant ha[d] met its burden in clearly demonstrating that the [Subaru] was loaned to Sopneski by Reynolds while Sopneski's own vehicle was in for repairs . . . and that Sopneski provided Reynolds with proof of insurance." The court thus rendered judgment in favor of Reynolds on the second count of the complaint,[6] and this appeal followed.[7]

On appeal, the plaintiff claims that the court improperly rendered summary judgment because a genuine issue of material fact exists as to whether Reynolds is entitled to the immunity provided by § 14-60 (a). We disagree.

We begin by setting forth the relevant standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 312–13, 77 A.3d 726 (2013). "When a court renders summary judgment as a matter of law, our review is plenary, and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Armshaw* v. *Greenwich Hospital*, 134 Conn. App. 134, 137, 38 A.3d 188 (2012).

Additionally, because this appeal involves questions of statutory construction, we set forth our well established principles of statutory construction. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . Statutory interpretation is a question of law, over which our review is plenary." (Citation omitted; internal quotation marks omitted.) *Rutter* v. *Janis*, 180 Conn. App. 1, 7–8, 182 A.3d 85 (2018), aff'd, 334 Conn. 722, 224 A.3d 525 (2020).

In granting Reynolds' motion for summary judgment, the court concluded that there was no genuine issue of material fact that Reynolds had loaned the Subaru to Sopneski on a temporary basis while her own motor vehicle was being repaired, in accordance with § 14-60 (a).[8] The plain language of that statute permits dealers to "loan a motor vehicle or number plate or both . . . when a motor vehicle owned by or lawfully in the custody of such person is undergoing repairs . . . provided such person shall furnish proof to the dealer or repairer that he has liability and property damage insurance which will cover any damage to any person or property caused by the operation of the loaned motor vehicle, motor vehicle on which the loaned number plate is displayed or both. Such person's insurance shall be the prime coverage. . . ." General Statutes § 14-60 (a). In the present case, it is undisputed that the Subaru had been provided to Sopneski on a temporary basis while her own motor vehicle was being repaired by Reynolds. It also is undisputed that Reynolds verified that Sopneski had a valid automobile insurance policy prior to lending the Subaru to her.[9]

Our Supreme Court's decision in *Cook* v. *Collins Chevrolet, Inc.*, 199 Conn. 245, 246, 506 A.2d 1035 (1986), is instructive in resolving the plaintiff's claim. The issue in *Cook* was "the extent of the statutory liability of an automobile dealer and its insurer [under § 14-60] when a motor vehicle bearing a loaned dealer's license plate becomes involved in an accident." Id. In that case, the defendant dealer lent a dealer plate to the purchaser of a pickup truck while his registration was pending. Id., 247. Significantly, the dealer confirmed that the purchaser "had liability insurance covering personal injury and property damage" prior to so doing. Id. The

purchaser thereafter was involved in a motor vehicle accident with the plaintiff, who brought an action against the purchaser and the dealer. Id. The trial court subsequently granted the dealer's motion for summary judgment on the ground that it had fully complied with the requirements of § 14-60 when lending the dealer plates to the purchaser. Id., 248–49.

On appeal, our Supreme Court examined "the language, history, and applicability of § 14-60" and observed that a dealer's failure to comply with that statute by loaning a motor vehicle or dealer plate to an uninsured person "would make the dealer jointly liable" with that person. Id., 249–50. The court noted the "legislative intent to impose liability on a dealer *only* when [the dealer] violates the mandate of § 14-60 and lends dealer plates to a purchaser who is not insured." (Emphasis in original.) Id., 250 n.3. Because the dealer had confirmed that the purchaser was insured prior to lending him the dealer plates in question and "did not violate § 14-60 in any other way," the Supreme Court concluded that § 14-60 "on its face affords the plaintiff no remedy [against the dealer] in this case." Id., 250. Accordingly, the court held that the dealer "was entitled to summary judgment because of its full compliance with the conditions of § 14-60." Id., 252.

This court similarly has observed that § 14-60 (a) "reflects the legislative effort to protect the public from reckless driving of loaned motor vehicles. . . . By giving an injured person the statutory right to recover from the borrower's insurer when the borrower is at fault, § 14-60 (a) provides an incentive to those who test drive motor vehicles to drive with the same care that they would exercise if they were driving a motor vehicle they owned. . . . A dealer that has complied with the requirements set forth in § 14-60 *is not liable* for damages caused by the insured operator of the motor vehicle while that vehicle is displaying the loaned dealer number plate." (Citations omitted; emphasis added; internal quotation marks omitted.) *Rutter* v. *Janis*, supra, 180 Conn. App. 8–9. Bound by that precedent, the trial court concluded that the present case falls squarely within the ambit of § 14-60 (a).

The plaintiff nevertheless contends that Reynolds is not entitled to immunity under § 14-60 (a) because Reynolds provided Sopneski a motor vehicle, but not a dealer plate. He notes that Kathryn Wayland, Reynolds' chief executive officer, acknowledged in her deposition that the Subaru had a vanity license plate, not a dealer plate. Because § 14-60 is titled "Use of Dealers' and Repairers' plates," the plaintiff claims that the immunity afforded by that statute applies only to the lending of motor vehicles that have a dealer plate affixed. We disagree.

It is well established that, "[a]lthough the title of a statute provides some evidence of its meaning, the title

is not determinative of its meaning. . . . [B]oldface catchlines in the titles of statutes are intended to be informal brief descriptions of the contents of the [statutory] sections. . . . These boldface descriptions should not be read or considered as statements of legislative intent since their sole purpose is to provide users with a brief description of the contents of the sections." (Internal quotation marks omitted.) *Coyle* v. *Commissioner of Revenue Services*, 142 Conn. App. 198, 203, 69 A.3d 310, appeal dismissed, 312 Conn. 282, 91 A.3d 902 (2014). Moreover, the plain text of § 14-60 (a) provides that the statute applies to dealers who "loan a motor vehicle or number plate *or both*. . . ." (Emphasis added.) By its plain language, the statute thus encompasses situations in which a dealer lends either (1) a dealer vehicle, (2) a dealer plate, or (3) a dealer vehicle containing a dealer plate. The plaintiff's construction of § 14-60, therefore, is untenable.

The plaintiff also argues that a genuine issue of material fact exists as to whether Reynolds had "loaned" the Subaru to Sopneski, as that term is used in § 14-60 (a). Section 14-60 admittedly does not define the term "loan." When a statute does not define a term, "we look to the common understanding of the term as expressed in the dictionary." (Internal quotation marks omitted.) *Gomes* v. *Massachusetts Bay Ins. Co.*, 87 Conn. App. 416, 432, 866 A.2d 704 (2005), cert. denied, 273 Conn. 925, 871 A.2d 1031 (2005); see also General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language"). Black's Law Dictionary (11th Ed. 2019), p. 1122, provides several definitions of the term "loan," including, "1. An act of lending; a grant of something for temporary use," and "2. A thing lent for the borrower's temporary use. . . ." It also defines the term "lease" as "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, [usually] rent." Black's Law Dictionary, supra, p. 1066. It is undisputed that Reynolds granted Sopneski the temporary use of the Subaru for no fee on the date of the accident. Furthermore, as with any issue of statutory interpretation, we must construe the term "loan" in light of the context in which it is used. Section 14-60 (a) expressly permits a motor vehicle dealer to "loan a motor vehicle . . . when a motor vehicle owned by . . . such person is undergoing repairs by such dealer," which indisputably was the case here.

Because the agreement between the defendants is entitled "Subaru Rental Agreement"[10] and some variation of the word "rent" appears in the agreement twenty-six times,[11] the plaintiff argues that it raises a genuine issue of material fact regarding whether it more properly is characterized as a rental, rather than a loan. The undisputed facts surrounding Sopneski's use of the Subaru and the materials submitted in support of the

motion for summary judgment indicate otherwise. In her affidavit, Wayland contended that the Subaru was loaned, and not rented, to Sopneski while her own motor vehicle was undergoing repairs. An examination of the four corners of the agreement supports that averment. Although the title of the agreement is "Subaru Rental Agreement," the agreement plainly states that the contract is "FOR A TEMPORARY SUBSTITUTE VEHICLE." The agreement also provides that "Subaru vehicles are available only to customers who leave their vehicles with [Reynolds] for service or repair." In addition, Wayland attested in her affidavit that Sopneski paid nothing for her use of the Subaru, which was confirmed by the fact that the section of the agreement titled "Rental Rates and Charges" was left blank. See *Barnard* v. *Barnard*, 214 Conn. 99, 109, 570 A.2d 690 (1990) ("[a] contract is to be construed as a whole and all relevant provisions will be considered together" (internal quotation marks omitted)).

In the present case, it is undisputed that Reynolds provided Sopneski with the temporary use of a dealer vehicle while her own motor vehicle was undergoing repairs by Reynolds, a scenario expressly contemplated by § 14-60 (a). Prior to lending her that vehicle, Reynolds secured proof that Sopneski had a valid automobile insurance policy and had her sign the agreement, which provided for the use of "a temporary substitute vehicle" for "customers who leave their vehicles with [Reynolds] for service or repair." Irrespective of its label, the transaction, in essence, is a loan. In light of the foregoing, we agree with the trial court that no genuine issue of material fact exists as to whether the present case falls within the ambit of § 14-60. Accordingly, the trial court properly rendered summary judgment in favor of Reynolds on count two of the complaint.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In this opinion, we refer to Sopneski and Reynolds individually by name and collectively as the defendants.

[2] General Statutes § 14-154a (a) provides: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner."

[3] In disposing of the plaintiff's complaint as to Reynolds, the court's judgment constitutes an appealable final judgment. See Practice Book § 61-3 ("[a] judgment disposing of only a part of a complaint . . . is a final judgment if that judgment disposes of all causes of action in that complaint . . . brought . . . against a particular party or parties").

[4] The plaintiff alleged that Sopneski was negligent because, inter alia, she failed to (1) keep a proper lookout, (2) give the plaintiff a timely warning by sounding her horn, (3) apply her brakes in time to avoid the collision, (4) operate her vehicle under proper control, and (5) turn the vehicle in time to avoid the collision.

[5] General Statutes § 14-60 (a) provides in relevant part: "No dealer or repairer may loan a motor vehicle or number plate or both to any person except for (1) the purpose of demonstration of a motor vehicle owned by

such dealer, (2) when a motor vehicle owned by or lawfully in the custody of such person is undergoing repairs by such dealer or repairer, or (3) when such person has purchased a motor vehicle from such dealer, the registration of which by him is pending, and in any case for not more than thirty days in any year, provided such person shall furnish proof to the dealer or repairer that he has liability and property damage insurance which will cover any damage to any person or property caused by the operation of the loaned motor vehicle, motor vehicle on which the loaned number plate is displayed or both. Such person's insurance shall be the prime coverage. If the person to whom the dealer or repairer loaned the motor vehicle or the number plate did not, at the time of such loan, have in force any such liability and property damage insurance, such person and such dealer or repairer shall be jointly liable for any damage to any person or property caused by the operation of the loaned motor vehicle or a motor vehicle on which the loaned number plate is displayed. . . ."

[6] The judgment file indicates that the court rendered summary judgment "in favor of [Reynolds] only." In addition, we note that, in *Rodriguez* v. *Testa*, 296 Conn. 1, 21, 993 A.2d 955 (2010), our Supreme Court determined that 49 U.S.C. § 30106, known also as the Graves Amendment, preempts actions under § 14-154a because "the state statute does not impose liability on lessors for their failure to meet the type of insurance like requirements contemplated under the savings clause." In granting the defendant's motion for summary judgment, the court declined to address the preemption issue and instead, rested its decision on the applicability of § 14-60. In light of our resolution of this appeal, we likewise do not consider that alternative contention.

[7] During oral argument, the plaintiff orally moved for this court not to consider portions of Reynolds' appendix (letters between the plaintiff's counsel and Reynolds' commercial liability carrier) because they were not part of the record of the proceedings in the trial court. Because Reynolds' counsel agreed with the plaintiff's oral motion, we granted the plaintiff's motion and decline to consider those portions of Reynolds' appendix and any provisions of Reynolds' brief that reference this material.

[8] On appeal, the plaintiff concedes that Reynolds is a dealer, as defined by General Statutes § 14-1 (26).

[9] In moving for summary judgment, Reynolds offered the affidavit of Kathryn Wayland, its chief executive officer, who stated that it was the "routine practice and procedure" of Reynolds to verify that a customer had valid automobile insurance policy prior to loaning a dealer vehicle. Wayland also confirmed that, in accordance with that practice, Reynolds had made a photocopy of Sopneski's insurance card, which it kept on file. In support of its motion for summary judgment, Reynolds also attached Sopneski's insurance card as an exhibit. Sopneski's automobile insurance had an effective date of coverage between June 24, 2016, and June 24, 2017, and thus was valid at the time of the accident on May 28, 2017.

[10] We note that in *Saglimbene* v. *Baghdady*, Superior Court, judicial district of Fairfield, Docket No. CV-040409434-S (September 30, 2005) (40 Conn. L. Rptr. 63), the Superior Court rejected a similar argument as the one advanced by the plaintiff in this case. In *Saglimbene*, the plaintiff was injured in a motor vehicle accident with Joseph G. Baghdady, who was operating a motor vehicle on loan from Milford Gateway, Inc. (Gateway), an automobile dealership that was performing repairs on Baghdady's own vehicle. Id., 64. Gateway moved for summary judgment on the ground that § 14-60 (a) provides immunity from liability for dealers and repairers who loan a car to an insured driver while the driver's car is under repair. Id. The plaintiff countered, inter alia, that there were genuine issues of material fact as to whether Baghdady rented or loaned the vehicle from Gateway and thus claimed that the transaction fell under the purview of § 14-154a. Id. The court rejected that argument, stating: "Although the agreement [signed by Baghdady] is called a rental agreement, the affidavit of [the dealer's office manager indicated] that nothing was paid for the use of the car." Id., 65. As a result, the court concluded that there was no genuine issue that the car was anything other than a loaner vehicle to be used while Baghdady's car was being repaired, and thus fell within the protections of § 14-60 (a). Id.

[11] A review of the Subaru agreement provided in the plaintiff's appendix reveals that several portions of the agreement are faded and, as a result, illegible. Because of this, we are unable to verify the accuracy of the plaintiff's assertion that the term "rental" appears more than twenty times in the contract. However, as discussed subsequently, the temporary nature of the transaction reflects that the Subaru agreement operates as a loan, not a

rental. We view the use of the term "rental" throughout the Subaru agreement as merely poor drafting that does not raise a genuine issue of material fact.

---